**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Ernest LOPEZ, Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John VLAHOVICH,
Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Paula NADIR, Defendant-Appellant.**

Nos. 84-5068, 84-5070 and 84-5071.

United States Court of Appeals,
Ninth Circuit.

Argued March 5 and 6, 1986.

Submitted March 6, 1986.

Decided Sept. 4, 1986.

Designated for Publication Oct. 30, 1986.

Richard E. Drooyan, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

John Nese, Joel Levine, Stilz, Boyd, Levine & Handzlik, Los Angeles, Cal., for defendant-appellant.

Before PREGERSON and POOLE, Circuit Judges, and SOLOMON,* District Judge.

POOLE, Circuit Judge:

These cases involve a series of robberies and extortions to benefit West Coast Metallics Industries (West Coast Metallics), a Los Angeles company that refines precious metals. The crimes were committed by Lopez and Vlahovich at the direction of Nadir, owner and president of West Coast Metallics. The jury found appellants guilty of conspiracy, 18 U.S.C. § 371 (1982), obstruction of interstate commerce by rob-

* The Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

bery, 18 U.S.C. § 1951 (1982), collection of extensions of credit by extortionate means, 18 U.S.C. § 894 (1982), and racketeering, 18 U.S.C. § 1962 (1982). The court set aside Lopez's conviction of assaulting a postal carrier, 18 U.S.C. § 2114 (1982), and granted him a judgment of acquittal on that count. Nadir was also found guilty of receipt of stolen mail, 18 U.S.C. § 1708 (1982), and interstate transportation of stolen property, 18 U.S.C. § 2314 (1982). Appellants challenge their convictions on a variety of grounds. We affirm.

## I. *Admissibility of Evidence Seized from Vlahovich*

■ In March 1982, Vlahovich was arrested in a van after stealing a cement truck and assaulting a security guard. Pursuant to a search warrant, police seized a mask, a wig, and a pair of rubber gloves found in the van. Appellants claim that the denial of their pre-trial motion to preclude admission of this evidence was reversible error because the wig and mask were not relevant to the crimes charged, and any probative value was outweighed by the danger of prejudice in drawing attention to Vlahovich's unrelated criminal activity.

A district court has broad discretion to determine whether evidence is relevant. *United States v. Whitman*, 771 F.2d 1348, 1351 (9th Cir.1985). Relevant evidence should be admitted only if its probative value is not substantially outweighed by the danger of unfair prejudice. Fed.R. Evid. 403. We review a district court's decision to admit evidence under Rule 403 for an abuse of discretion. *See United States v. McKoy*, 771 F.2d 1207, 1214 (9th Cir.1985).

The government's theory was that Vlahovich had a distinctive method of operation involving the use of disguises. Witnesses testified that the perpetrators of the Wilkinson and Wildberg robberies wore wigs and masks. Thus, the seized evidence was relevant to show Vlahovich's plan, preparation, and identity with respect to the crimes charged in the indictment. The district court excluded evidence that Vlahovich was engaged in criminal conduct at the time the evidence was seized, so there was no danger the jury would infer he was involved in unrelated crimes. Any prejudice from admission of the seized evidence was due to its probative value and was not unfair. *See United States v. Bailleaux*, 685 F.2d 1105, 1111 (9th Cir.1982). Therefore, the district court did not abuse its discretion in denying appellant's motion to exclude this evidence.

## II. *Prosecutorial Misconduct*

Appellants argue that they were prejudiced by the prosecutor's improper comments in closing argument regarding the wig and mask seized from Vlahovich. Appellants also claim that during closing argument the prosecutor vouched for Mandel's credibility and commented on appellants' failure to testify.

■ A prosecutor's improper closing argument is not grounds for reversal unless it rises to the level of plain error. *United States v. Bagley*, 772 F.2d 482, 495 (9th Cir.1985), *cert. denied*, — U.S. —, 106 S.Ct. 1215, 89 L.Ed.2d 326 (1986); *United States v. Falsia*, 724 F.2d 1339, 1342 (9th Cir.1983). Moreover, where the defendant opens the door to an argument, it may be "fair advocacy" for the prosecution to enter. *Falsia*, 724 F.2d at 1342.

■ The prosecutor's comments regarding the wig and mask were made in response to defense counsel's argument that the criminal activity ceased in December 1980, after Mandel "retired" from West Coast Metallics. The prosecutor argued that the crimes did not stop and that the evidence seized from Vlahovich showed that he "was once again up to no good" in March 1982. While the question is not free of doubt, such rebuttal argument could reasonably constitute invited response to the defense's suggestion that Mandel, rather than appellants, actually committed the crimes charged. Given the government's theory that Vlahovich's method of operation included the use of disguises, it was a fair inference from seizure of the wig and mask that he was involved in criminal activity at that time. But even if the prosecu-

tor's argument was improper, because the suggested criminal activity referred to was unrelated to the crimes charged in the indictment, it did not constitute plain error. Moreover, the district judge neutralized any potential prejudice by striking the prosecutor's statement and giving a cautionary instruction.

■ The prosecutor did not improperly vouch for Mandel's credibility, but merely responded to defense counsel's insinuation that the government did not believe its key witness. It would be improper for the prosecutor to suggest that Mandel's credibility should be satisfactory to the jury because it was satisfactory to the grand jury. However, even if the prosecutor did make such a suggestion, the judge gave curative instructions emphasizing that the fact that an indictment has been returned is not evidence, and reminding the jury of its exclusive role in determining credibility.

■ A prosecutor may call attention to the defendant's failure to present exculpatory evidence if those comments do not call attention to the defendant's failure to testify and are not of such a character that the jury would naturally and necessarily take them to be a comment on the failure to testify. *Bagley*, 772 F.2d at 494; *United States v. Soulard*, 730 F.2d 1292, 1306 (9th Cir.1984). Here the prosecutor did not directly comment on appellants' failure to testify. Rather, he referred to the lack of any evidence showing that appellants tried to disassociate themselves from Mandel, whose character they repeatedly attacked. The district court did not err in denying appellants' motion for a mistrial based upon these comments by the prosecutor.

### III. *Sufficiency of the Evidence to Sustain Lopez's Convictions*

■ Lopez challenges the sufficiency of the evidence by arguing that his convic-

tions cannot be sustained because Mandel's testimony was uncorroborated. Mandel's testimony involving Lopez in the Wilkinson robbery was supported by eyewitness descriptions of the robbers and by Murphy's in-court identification.[1] Gutbezahl identified Lopez as one of his assailants in the Maraton extortion. However, only Mandel placed Lopez at the scene of the Wildberg robbery and implicated Lopez in the Parisienne extortion.

■ The uncorroborated testimony of an accomplice is enough to sustain a conviction unless the testimony is incredible or unsubstantial on its face. *United States v. Whitten*, 706 F.2d 1000, 1007 (9th Cir.1983), *cert. denied*, 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984); *United States v. Escalante*, 637 F.2d 1197, 1200 (9th Cir.), *cert. denied*, 449 U.S. 856, 101 S.Ct. 154, 66 L.Ed.2d 71 (1980). Lopez claims that Mandel's testimony was incredible because it was contradicted in certain respects and because Mandel was untrustworthy. However, Mandel's testimony was not incredible on its face; the jury could and did find it believable. Appellants presented extensive evidence impeaching Mandel. The jury was aware of the challenges to Mandel's credibility; nevertheless, it believed him. That was its proper prerogative. *United States v. Clevenger*, 733 F.2d 1356, 1359 (9th Cir.1984); *Escalante*, 637 F.2d at 1200. Viewing the evidence in the light most favorable to the government, *Clevenger*, 733 F.2d at 1358, there was sufficient evidence that Lopez committed the crimes of which he was convicted.

### IV. *Hearsay and Confrontation Clause Objections*

Lopez objects generally to Mandel's testimony concerning Nadir's declarations

---

1. We reject Lopez's argument that the district court committed plain error in permitting testimony by Berke, a witness to the Wilkinson robbery, and the in-court identification by Murphy, who saw Lopez going through Wilkinson trash bins several weeks before the robbery. Berke simply described his observations of the robbery and admitted that he could not identify

either of the robbers. Murphy's in-court identification was supported by his previous identification of Lopez from a photospread. Lopez does not claim that the photospread procedure was unnecessarily or impermissibly suggestive. Absent such an improper procedure, our inquiry ends. *Bagley*, 772 F.2d at 492.

about planning the robberies, obtaining and disposing of the gold, and collecting money from creditors of West Coast Metallics.

 Mandell was a coconspirator and his uncorroborated testimony was sufficient to establish the existence of the conspiracy. *See United States v. Wolfson,* 634 F.2d 1217, 1219 (9th Cir.1980). Mandel's testimony as to appellants' declarations at meetings in which they discussed the conspiracy, its objectives, and how it would proceed, did not violate the hearsay rule. Such testimony had dual aspects. The first was that it was not offered to prove the truth of the conspirators' statements, but was evidence of verbal acts which brought the conspiracy into existence. *See id.* The second aspect was indeed offered to prove the truth of matters asserted. Nonetheless, Nadir's statements are not hearsay, Fed.R.Evid. 801(d)(2)(E), because they were made during the course and in furtherance of the conspiracy, and were admissible against Lopez because he was a coconspirator. *United States v. Brock,* 667 F.2d 1311, 1315 (9th Cir.1982), *cert. denied,* 460 U.S. 1022, 103 S.Ct. 1271, 75 L.Ed.2d 493 (1983).

 Lopez claims his right to confrontation was violated because he could not cross-examine Nadir regarding Mandel's testimony. The Supreme Court has rejected the argument that the declarant must be unavailable as a prerequisite to the admission of coconspirator statements. *United States v. Inadi,* —— U.S. ——, 106 S.Ct. 1121, 1129, 89 L.Ed.2d 390 (1986). The presence or absence of indicia of reliability determines whether a statement may be placed before the jury even though the declarant is not in court. *See Ohio v. Roberts,* 448 U.S. 56, 65–66, 100 S.Ct. 2531, 2538–39, 65 L.Ed.2d 597 (1980); *Dutton v. Evans,* 400 U.S. 74, 89, 91 S.Ct. 210, 219, 27 L.Ed.2d 213 (1970). The inquiry into reliability requires us to consider four factors: (1) Whether the statements are assertions of past fact, (2) whether the declarant had personal knowledge of the facts he related, (3) the possibility of faulty recollection, and (4) whether the circum-

stances suggest that the declarant misrepresented the defendant's role. *United States v. Monks,* 774 F.2d 945, 952 (9th Cir.1985) (citing *Dutton,* 400 U.S. at 88–89, 91 S.Ct. at 219–20). Nadir's statements possess sufficient indicia of reliability to satisfy these requirements. Thus, the admission of Mandel's testimony regarding Nadir's statements did not violate the confrontation clause.

## V. *Extortion Convictions*

 Appellants were convicted of two counts of collecting extensions of credit by extortionate means in violation of 18 U.S.C. § 894. They challenge their convictions on the grounds that (1) the debts owed to West Coast Metallics were not extensions of credit, and (2) the statute does not apply to the collection of legitimate debts.

The Maraton and Parisienne extortions charged in Counts 9 and 10 followed defaulted payments on bad checks. Appellants rely on *United States v. Boulahanis,* 677 F.2d 586 (7th Cir.), *cert. denied,* 459 U.S. 1016, 103 S.Ct. 375, 74 L.Ed.2d 509 (1982), as authority for the proposition that defaulted payments do not qualify as extensions of credit for purposes of section 894. Other circuits have declined to follow such a narrow definition of extension of credit. *See United States v. McMahan,* 744 F.2d 647, 650 (8th Cir.1984) (accepting a check constitutes an extension of credit); *United States v. DiPasquale,* 740 F.2d 1282, 1288 (3d Cir.1984) (a claimed debt is an extension of credit), *cert. denied,* 469 U.S. 1228, 105 S.Ct. 1226, 84 L.Ed.2d 364 (1985); *see also United States v. Bonanno,* 467 F.2d 14, 16–17 (9th Cir.1972) (rejecting contention that section 894 does not apply to collection of simple debt), *cert. denied,* 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973). However, we need not decide whether an extension of credit results merely from customer default.

Extension of credit is broadly defined by statute, 18 U.S.C. § 891(1) (1982), to include any agreement to defer repayment of a

debt.[2] *See Boulahanis,* 677 F.2d at 590. Nadir agreed to sell gold to Maraton with the understanding that Maraton's check would not be cashed until there were sufficient funds in the account. Nadir agreed to allow the owner of Parisienne to pay an additional amount each time he ordered gold to cover the amount owed on the bad checks. In both instances, Nadir deferred repayment of the debt and, therefore, extended credit for purposes of section 894. *See United States v. Horton,* 676 F.2d 1165, 1171–72 (7th Cir.1982), *cert. denied,* 459 U.S. 1201, 103 S.Ct. 1164, 75 L.Ed.2d 431 (1983); *United States v. Mase,* 556 F.2d 671, 674 (2d Cir.1977), *cert. denied,* 435 U.S. 916, 98 S.Ct. 1472, 55 L.Ed.2d 508 (1978).

■ Appellants' argument that the statute does not encompass the use of extortionate means to collect legitimate debts is without merit. Although Congress was primarily concerned with abuses by organized crime, it is clear that section 894 proscribes a class of activities, that is, extortionate credit transactions. *United States v. Annerino,* 495 F.2d 1159, 1164–65 (7th Cir.1974). The statute is directed to the use of extortionate means to collect monies which creditors claim are owing to them, regardless how the debt arose. *United States v. Briola,* 465 F.2d 1018, 1021 (10th Cir.1972), *cert. denied,* 409 U.S. 1108, 93 S.Ct. 908, 34 L.Ed.2d 688 (1973). Section 894 has been applied to the collection of lawful debts. *See, e.g., United States v. Nace,* 561 F.2d 763, 770–71 (9th Cir.1977) (loan to manage business); *United States v. Schwartz,* 548 F.2d 427, 429–30 (2d Cir.1977) (purchase and leaseback of trucking equipment); *United States v. Sears,* 544 F.2d 585, 586 (2d Cir.1976) (loan for downpayment on a house). It is irrelevant that the debts Maraton and Parisienne owed to West Coast Metallics were legitimate. The evidence was sufficient to establish that appellants used coercion to collect extensions of credit and this was a violation of section 894.

## VI. *Lopez's Conspiracy and Racketeering Convictions*

The jury found Lopez guilty of Count 13, assaulting a postal carrier in violation of 18 U.S.C. § 2114, but the court granted his motion for judgment of acquittal. Lopez claims that this acquittal requires that his conspiracy and RICO convictions be reversed because it is impossible to determine whether the jury relied on Count 13 as the overt act in furtherance of a conspiracy and as one of the two predicate acts necessary to show a pattern of racketeering.

■ A conspiracy conviction must be reversed if the trial court instructs the jury that it need find only one of the multiple objects alleged in order to convict of conspiracy in a case in which the reviewing court holds any one of the supporting counts legally insufficient. *United States v. DeLuca,* 692 F.2d 1277, 1281 (9th Cir. 1982); *United States v. Carman,* 577 F.2d 556, 566–68 (9th Cir.1978). Here, the district court instructed the jury that it could convict under the conspiracy count if it found a conspiracy to commit either of the objects alleged in the indictment. However, in granting Lopez's motion for a judgment of acquittal, the district court did not find one of the objects of the conspiracy was legally insufficient.

Count One charged that appellants conspired to obstruct the movement of gold in interstate commerce in violation of 18 U.S.C. § 1951, and to steal registered parcels containing gold from the United States Postal Service in violation of 18 U.S.C. § 1708. It is not disputable that the conduct alleged in Counts 4 and 8, for the Wilkinson and Wildberg robberies, charged violations of 18 U.S.C. § 1951. Similarly, the conduct alleged in Counts 2, 3, 11, 12,

**2.** 18 U.S.C. § 891 provides:
 For purposes of this chapter:
 (1) To extend credit means to make or renew any loan, or to enter into any agreement, tacit or express, whereby the repayment or satisfaction of any debt or claim, whether acknowledged or disputed, valid or invalid, and however arising, may or will be deferred.
 * * *

and 14, for theft and receipt of stolen mail, charged violations of 18 U.S.C. § 1708. The evidence was not legally insufficient as to either object of the conspiracy and, therefore, this case is not controlled by *Carman* and *DeLuca*.

In granting the judgment of acquittal on Count 13, the district court simply concluded that there was insufficient evidence that Lopez committed one alleged overt act, the postal carrier assault. This conclusion does not affect the jury's implicit finding that Lopez, Vlahovich and Nadir made an agreement to commit an illegal act. Moreover, as discussed above, the jury convicted Lopez of several other overt acts.

■■■■ Once the government establishes that a conspiracy exists, evidence of only a slight connection is necessary to convict a defendant of knowing participation therein. *United States v. Arbelaez*, 719 F.2d 1453, 1458 (9th Cir.1983), *cert. denied*, 467 U.S. 1255, 104 S.Ct. 3543, 82 L.Ed.2d 847 (1984); *United States v. Friedman*, 593 F.2d 109, 115 (9th Cir.1979). In reviewing the sufficiency of the evidence to support Lopez's conspiracy conviction, we must view the evidence, and all reasonable inferences therefrom, in the light most favorable to the verdict. *United States v. Reese*, 775 F.2d 1066, 1071 (9th Cir.1985). Viewed in this manner, there was sufficient evidence to show that Lopez conspired with Nadir and Vlahovich. Therefore, we affirm Lopez's conspiracy conviction.

■■ Lopez relies on *United States v. Brown*, 583 F.2d 659, 669–70 (3d Cir.1978), *cert. denied*, 440 U.S. 909, 99 S.Ct. 1217, 59 L.Ed.2d 456 (1979), in arguing that the judgment of acquittal on Count 13 requires reversal of his RICO conviction. *Brown* held that if a defendant is charged with multiple predicate offenses, the evidence must be sufficient to prove all of them if the reviewing court cannot determine which specific offenses the jury relied upon in reaching its verdict on the RICO count. *See United States v. Riccobene*, 709 F.2d 214, 227 (3d Cir.1983), *cert. denied*, 464

U.S. 849, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983).

This circuit has not adopted the rationale of *Brown*, and other circuits have affirmed RICO convictions even though the appellate court determined that there may have been insufficient evidence of a substantive offense which also was charged as a predicate act. *See United States v. Peacock*, 654 F.2d 339, 348 (5th Cir.1981); *modified*, 686 F.2d 356 (5th Cir.1982), *cert. denied*, 464 U.S. 965, 104 S.Ct. 404, 78 L.Ed.2d 344 (1983); *United States v. Parness*, 503 F.2d 430, 438 (2d Cir.1974), *cert. denied*, 419 U.S. 1105, 95 S.Ct. 775, 42 L.Ed.2d 801 (1975). However, even assuming that the rationale of *Brown* is sound, reversal of Lopez's RICO conviction is not required.

The RICO count charged Lopez with nine predicate acts based upon five substantive offenses: the Wilkinson and Wildberg robberies, the two extortions and the mail carrier assault. The jury convicted Lopez of all five substantive offenses. The judgment of acquittal on Count 13 arguably invalidates one of the predicate acts upon which the jury may have relied in convicting Lopez under RICO. However, the verdict shows that the jury found Lopez committed the eight other predicate acts. The only question is whether the jury found Lopez committed at least two of those predicate acts in the conduct of a RICO enterprise.

The RICO count alleged that Vlahovich committed eight predicate acts; these were the same predicate acts alleged against Lopez, excluding the mail carrier assault invalidated by the judgment of acquittal. The jury convicted Vlahovich of violating RICO based solely on his involvement in the Wilkinson and Wildberg robberies and the two extortions. Therefore, the jury must have found that at least two, if not all, of the eight predicate acts occurred in the conduct of a RICO enterprise. Since both Lopez and Vlahovich were convicted of the four substantive offenses which correspond to the eight predicate acts alleged against them in the RICO count, and the

jury convicted Vlahovich of violating RICO, we hold as a matter of law that the jury must have found that Lopez committed the requisite number of predicate acts to establish a RICO violation and that those acts occurred in the conduct of a RICO enterprise. Lopez's RICO conviction is affirmed.

VII. *Nadir's Motion for a New Trial*

■ A motion for a new trial must be based on newly discovered evidence and must show due diligence on the part of the movant to discover the evidence. In addition, the evidence must be material to the issues involved, not merely cumulative or impeaching, and must indicate that a new trial probably would produce an acquittal. *United States v. Diggs*, 649 F.2d 731, 739 (9th Cir.1981), *cert. denied*, 454 U.S. 970, 102 S.Ct. 516, 70 L.Ed.2d 387 (1981); Fed. R.Crim.P. 33. We review the denial of a motion for a new trial for an abuse of discretion. *See Diggs*, 649 F.2d at 740.

Nadir moved for a new trial based on three items of "newly discovered" evidence. The district court denied the motion because Nadir failed to establish due diligence and because the evidence was not material. The Marton check was found at West Coast Metallics, and Nadir did not indicate why it was not presented until after trial. Moreover, this evidence is irrelevant to the issue whether there was an extension of credit for purposes of 18 U.S.C. § 894. The Darva Coin invoices were in the custody of Nadir's civil attorney prior to trial, and at any rate, they do not undermine the testimony that Darva Coin's owner bought Krugerrand coins from Nadir. The lot refining sheets are business records of West Coast Metallics and would have been merely cumulative evidence relating to Mandel's credibility.

Appellants raise a number of additional arguments in challenging their convictions. We reject those arguments and find that they do not merit discussion.

**AFFIRMED.**