UNITED STATES of America,
Plaintiff–Appellee,

v.

Nestor GALINDO, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Miriam GALINDO,
Defendant–Appellant.

Nos. 89–50285, 89–50287.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 10, 1990,
as to 89–50285.

Submitted on the Briefs Aug. 10, 1990,
as to 89–50287 *.

Decided Sept. 11, 1990.

Michael J. Treman, Santa Barbara, Cal., and Paul L. Abrams, Deputy Federal Public Defender, Los Angeles, Cal., for defendants-appellants.

Jeffrey C. Eglash, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before POOLE and THOMPSON, Circuit Judges, and PRO, District Judge.**

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R. App.P. 34(a) and Ninth Circuit Rule 34–4.

** Honorable Philip M. Pro, United States District Judge for the District of Nevada, sitting by designation.

DAVID R. THOMPSON, Circuit Judge:

Nestor William Galindo and Miriam Galindo appeal their convictions, following a jury trial, for conspiracy to aid and abet and for aiding and abetting the passing of counterfeit traveler's checks in violation of 18 U.S.C. §§ 371, 513(a), and 2. We have jurisdiction under 28 U.S.C. § 1291. We affirm.

## FACTS

Beginning on January 24, 1989, Nestor and Miriam Galindo were tried before a jury on one count of conspiracy to aid and abet the possession and passing of counterfeit traveler's checks and on three counts of aiding and abetting the passing of counterfeit traveler's checks. At trial, the government attempted to show that the Galindos sold counterfeit checks, induced others to cash counterfeit checks and share the proceeds with them, and induced others to use counterfeit traveler's checks to buy merchandise at department stores, later returning the merchandise for cash refunds.

On January 25, 1989, during a recess in the trial, the Galindos and the government engaged in plea negotiations and arrived at a proposed disposition of the case. The court rejected the proposed agreement and ordered the trial to resume.

Shortly thereafter, the court explained to the jury the reason for the delay: "We had this delay. There was a big long argument as to whether or not there could be a plea bargain worked out where there would be a plea recommended sentencing but I couldn't get together." Once the jury had been excused for the evening, the Galindos moved for a mistrial. The court denied their motion.

The next day, before closing arguments were presented, the court gave the jury the following cautionary instruction:

[Y]esterday, I think inadvertently I said something to the effect that the reason we were hung up was that we were wrangling or having legal arguments about a possible plea bargain. But that does not mean that anybody admitted anything or one way or the other.

This plea bargaining business, as you have perhaps noted ... is done all the time. That's no secret. But I do instruct you you can not draw any inference of any kind for or against either side because there was some bargaining. It's the way the prosecutors and defense attorneys operate to sometimes expedite cases, with the blessing of the Court, not to indict or not to indicate guilt or innocence or the proof of it on either side. Can you all disassociate that from your minds and decide this case solely on the facts that have been developed and the law that the Court will give you after the argument?

Okay, answer is yes. All right, proceed.

The Galindos renewed their motion for a mistrial, and the court denied it.

The trial concluded that day. The jury then deliberated approximately three days. During deliberations, at the jury's request, the court read back the testimony of one of the government's witnesses, Mario Garcia. The jury returned a verdict of guilty on the conspiracy count and on one of the aid and abet counts, and of not guilty on the two other aid and abet counts.

The Galindos moved for judgment of acquittal and for a new trial. The court denied these motions.

## DISCUSSION

On appeal, the Galindos argue that the district court should have granted their motion for a new trial, because the court told the jury that plea discussions had occurred. We review the denial of a motion for a new trial for an abuse of discretion. *United States v. Lopez*, 803 F.2d 969, 977 (9th Cir.1986), *cert. denied*, 481 U.S. 1030, 107 S.Ct. 1959, 95 L.Ed.2d 530 (1987).

We have held that a convicted criminal defendant "is entitled to a new trial if there exist[s] a reasonable possibility that ...

extrinsic material could have affected the verdict." *United States v. Vasquez*, 597 F.2d 192, 193 (9th Cir.1979). In *Vasquez*, the official court file in the case had been left inadvertently in the jury room during four hours of jury deliberation. Because the file contained information highly prejudicial to the defendant which had not been brought out at trial and most of the jurors had glanced through or read the file, we concluded that a reasonable possibility existed that the file could have affected the verdict. *Id.* at 194.

As we have stated, "the *Vasquez* test is compelled by constitutional considerations." *Gibson v. Clanon*, 633 F.2d 851, 854 (9th Cir.1980), *cert. denied*, 450 U.S. 1035, 101 S.Ct. 1749, 68 L.Ed.2d 231 (1981). This test is "equivalent in severity to the harmless error rule applicable to constitutional errors under [*Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)]." *Gibson*, 633 F.2d at 853.

The Galindos contend that the district court's mention of the plea discussions prejudiced the jury's deliberations because at least some of the jurors must have assumed that only guilty defendants engage in plea discussions. We agree that the jury should not be exposed to this kind of information in a criminal case. The district court's statement that plea negotiations had occurred was error. Moreover, the error was of constitutional dimension, because it affected the Galindos' right to a fair trial. Thus, the Galindos are entitled to a new trial unless the government can prove that no reasonable possibility exists that the court's statement contributed to the jury's verdict. *Id.* at 853 n. 1.

Certainly it is *possible* that the district court's statement about plea discussions could have affected the jury's verdict. However, after a careful review of the record in this case, we conclude that the government has carried its burden by proving that no *reasonable* possibility exists that the statement could have affected the verdict. Various factors which, when weighed together against the court's statement, lead us to this conclusion.

First, the content of the district court's statement did not focus on the plea discussions that occurred, but on the delay in the jury's return to the courtroom. The court made the statement simply to explain the delay. The disclosure that plea discussions had taken place was incidental to the court's explanation.

Next, the district court gave the jury a curative instruction soon after the Galindos' motion for a mistrial called the error to the court's attention. The Galindos made their motion for a mistrial after the jury had been excused for the evening, and the court gave its instruction the next day, before closing arguments were presented. Moreover, the curative instruction was forceful and obviously was given with conviction. The court told the jury that no one had admitted anything, and instructed the jury not to draw any inferences from the plea negotiations. The court followed this instruction by asking the jurors whether they could put the plea negotiations out of their minds and decide the case on the facts developed in court and on the law as instructed.

Next, we note that the jury deliberated approximately three full days after a trial that lasted about that same length of time. Although this is a circumstance which in a given case can indicate a confused jury, here it negates any suggestion that the jury was stampeded to a verdict against the Galindos out of prejudice resulting from the district court's statement at trial about plea negotiations. *Cf. Marino v. Vasquez*, 812 F.2d 499, 505–06 & n. 8 (9th Cir.1987) (inference that extrinsic material prejudiced the verdict where jury deliberated almost thirty days, then was exposed to extrinsic material and reached a guilty verdict within one or two days thereafter).

Finally, the jury's verdict of guilty on the two counts of which the Galindos were convicted, and its verdict of not guilty on the other two counts, leads us to conclude that the jury properly assessed the weight of the evidence. The jury convicted the Galindos on the counts on which the evi-

**780**

dence was the strongest and acquitted them on the counts on which the evidence was the weakest. Rather than suggesting a compromise verdict, this suggests that the jury weighed the evidence carefully and properly applied it to the charges.

At trial, the Galindos faced three counts of aiding and abetting three counterfeit check cashers, and one count of conspiring with each other to do so. The government wanted to call as witnesses all three check cashers, Elisa Dietrich, Mario Garcia, and Ana Garcia. However, the government was unable to call Ana Garcia as a witness and instead had to rely on Kenneth Quintana to testify as to what he saw Ana Garcia do.

Elisa Dietrich testified at length and in detail as to how Nestor coerced her into passing counterfeit checks by threatening to expose that she was in the country illegally and that she had not reported as required to a probation officer. She testified that Nestor and Miriam furnished her with the checks and told her how to pass them at stores. She also testified as to what percentage of the proceeds she was allowed to keep. On cross-examination, the Galindos attacked her credibility by eliciting the details of a deal she had struck with the government, though under the deal she would have to leave the country. The jury returned a verdict of guilty on this count, and on the conspiracy count. The record clearly shows that the case against the Galindos was most compelling on these counts.

Mario Garcia testified that Miriam sold him counterfeit checks and that he cashed them. He also testified that he discussed with Nestor a possible reduction in the price he paid for the checks. However, on cross-examination, Mario Garcia's credibility was seriously undermined by the disclosure that he had told Federal Bureau of Investigation agents and a grand jury that it was Carmen Perez, Nestor's mother, and not Nestor and Miriam, who sold him the counterfeit checks. Further, Mario Garcia revealed that he would escape prosecution for his own activities in return for his testimony. Finally, Mario Garcia admitted that

he fought with Nestor over Ana Garcia, Mario Garcia's sister and Nestor's former girlfriend. Given these facts, Mario Garcia's testimony carried little weight, and the jury easily could have found a reasonable doubt that the Galindos aided Mario Garcia's criminal activities. The jury returned a verdict of not guilty on the count of aiding and abetting Mario Garcia.

Kenneth Quintana testified that he saw Ana Garcia pass traveler's checks, though he did not testify that he knew they were counterfeit. At least some checks that Ana Garcia passed were in fact counterfeit. He also testified that he saw Ana Garcia mail cash in packages addressed to Nestor. However, these observations alone do not constitute proof beyond a reasonable doubt that the Galindos aided Ana Garcia in criminal activity. The jury returned a verdict of not guilty on the count of aiding and abetting Ana Garcia.

In summary, after a review of the entire record, *see United States v. Morris*, 827 F.2d 1348, 1351 (9th Cir.1987), *cert. denied*, 484 U.S. 1017, 108 S.Ct. 726, 98 L.Ed.2d 675 (1988), we conclude that the government carried its burden of proving that no reasonable possibility exists that the district court's statement about plea discussions could have affected the jury's verdict. The district court did not abuse its discretion in concluding that the Galindos are not entitled to a new trial.

AFFIRMED.