**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Eugene EARL, Defendant–Appellant.**

**No. 93–10414.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 12, 1994.

Decided June 21, 1994.

Franny A. Forsman, Federal Public Defender, Las Vegas, NV, for defendant-appellant.

Anthony S. Murry, Asst. U.S. Atty., Las Vegas, NV, for plaintiff-appellee.

Before: GOODWIN, POOLE and REINHARDT, Circuit Judges.

PER CURIAM:

## I.

■ On the basis of circumstantial evidence offered through the testimony of a paid informer, Earl was convicted of possession of cocaine with intent to distribute and sentenced to 24 years imprisonment. The government relied on the doctrine of "constructive possession" to show that Earl had dominion and control over the drugs.

On appeal, Earl argues that the evidence was insufficient for a "rational trier of fact [to] have found the essential elements of the crime beyond a reasonable doubt." *United States v. Martinez,* 967 F.2d 1343, 1345 (9th Cir.1992). The government's presentation at oral argument was unusually effective. Counsel carefully marshalled all of the meager facts and presented them fairly and well. He did the best he could, with a record that was simply not adequate to support a conviction. Despite his efforts, we conclude that Earl's argument is correct. The evidence is insufficient. We reverse.

## II.

On October 22, 1992, an agent of the Drug Enforcement Administration ("DEA"), received a telephone call from a convicted felon and paid informer named Douglas. Douglas told the agent that he had just left a residence in Las Vegas, Nevada, he called the "crime house," and that, while there, he had a discussion with Michael Jones about future cocaine transactions. Douglas reported that the conversation had taken place at a table with two kilograms of rock cocaine and an Uzi-type firearm on it.

On the basis of this information, DEA agents obtained a search warrant for the residence. Upon arrival, they found Earl and four other individuals inside, but not Jones. A search of the residence revealed the following items: a plastic bag, a metal strainer, baking soda, rubber gloves, a triple beam scale, 43 vellum pills, 258.6 grams of cocaine base, 31.1 grams of cocaine, traces of marijuana, a Davis Industries .380 caliber semi-automatic handgun, and a Smith and Wesson 9mm handgun.

All occupants of the residence were arrested and taken to the DEA's office for questioning. Earl was later booked and charged with possession of cocaine with intent to distribute. He was tried and convicted on four counts.

## III.

Earl contends that there is insufficient evidence to show that he possessed the ability to exercise dominion and control over the cocaine. If he is correct, his conviction must be reversed. "A person may not be convicted of illegal possession of contraband unless [he] can exercise dominion or control over it." *United States v. Savinovich,* 845 F.2d 834, 837 (9th Cir.), *cert. denied,* 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988).

In order to sustain a conviction, there must be sufficient evidence to show that the defendant had either actual or constructive possession of the cocaine. *See United States v. Disla,* 805 F.2d 1340, 1350 (9th Cir.1986). The government contends that Earl had constructive possession. That term, however, is not free from ambiguity. Constructive pos-

session "has been generally defined as knowingly having both the power and intention at a given time to exercise dominion or control over the property." *United States v. Cousins,* 427 F.2d 382, 384 (9th Cir.1970). "The circumstances of each case must be examined to determine if there is such a nexus or relationship between the defendant and the goods that it is reasonable to treat the extent of the defendant's dominion and control as if it were actual possession." *Id.* (quoting *United States v. Casalinuovo,* 350 F.2d 207, 209–11 (2d Cir.1965).

■ At trial, the government offered evidence to establish that Earl had dominion over the *residence* in which the cocaine was found and therefore over the contraband itself. This evidence consisted of the testimony of the paid informer. We have held that the uncorroborated testimony of an accomplice is sufficient to prove constructive possession of contraband "unless it is incredible or insubstantial." *See United States v. Lai,* 944 F.2d 1434, 1440 (9th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 947, 117 L.Ed.2d 116 (1992). So, too, with the testimony of a paid informer. Douglas' testimony, however, is neither credible nor substantial.

■ Douglas' testimony is replete with contradictory statements. A few examples follow. Douglas testified that he discussed the future purchase of drugs with Jones in the "front room"; however, he had earlier reported to the DEA that his discussion with Jones took place in a different location, the kitchen. When asked at the trial who conducted "crime" at the residence, Douglas named only Earl. He neglected to name any of the number of other people who, he had said minutes before, sold drugs at that location. Douglas testified that he had never purchased drugs from Earl or from anyone else. Within minutes he again contradicted himself and testified that he too "conducted crime at [the residence]," which he called the "crime house."

While the lack of credibility that marks Douglas' uncorroborated testimony may be enough to render it insufficient to serve as the basis for a finding that Earl was guilty of constructive possession of the cocaine, we rest our decision instead on its lack of substantiality. Upon careful analysis, Douglas' testimony tells us very little with respect to Earl's dominion or control over the premises or the drugs. His testimony that Earl is the "crime king" is insufficient to establish that any of the individuals (including Douglas) who conducted drug deals at the residence reported to Earl, or were Earl's agents. His unexplained testimony that "he (Earl) stay there," (referring to the residence) is equally inadequate to support an inference of dominion or control. Moreover, Douglas testified that, on the day of Earl's arrest, he was going to the residence to see someone else. There is, in the end, only insubstantial evidence, at best, that Earl was the owner or occupant of the house in question, or that he was otherwise in constructive possession of the contraband.

In the cases in which we have upheld narcotics convictions on the basis of constructive possession, the defendant's dominion over the contraband was established by clear evidence of his dominion over the residence or vehicle in which the contraband was found. *See, e.g., United States v. Soyland,* 3 F.3d 1312, 1315 (9th Cir.1993) (constructive possession found where drugs and large sum of cash discovered in defendant's car and circumstances of defendant's prior arrests mirrored those of instant offense); *United States v. Walker,* 993 F.2d 196, 200 (9th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 276, 126 L.Ed.2d 227 (1993) (constructive possession found where defendant possessed keys to the inner and outer doors to the apartment and the three bedrooms where the drugs were found and defendant's clothes and shoes, a receipt bearing his name and a large sum of cash found near the drugs in one bedroom).

Where the government has shown mere proximity to the contraband, however, we have refused to find constructive possession. "Mere proximity to contraband, presence on property where it is found, and association with a person or persons having control of it are all insufficient to establish constructive possession." *United States v. Rodriguez,* 761 F.2d 1339, 1341 (9th Cir.1985). *See, e.g., United States v. Ramirez,* 880 F.2d 236, 238 (9th Cir.1989) (evidence that defendant was

cocaine user in house where large amounts of cash and cocaine were easily accessible, that defendant had spent night in bedroom with ledger of drug transactions, and that defendant "was apprehended while emerging from bathroom that contained both cocaine and heroin and materials used in drug distributions was insufficient," even collectively, to establish constructive possession); *Delgado v. United States*, 327 F.2d 641, 641–42 (9th Cir.1964) (drugs found in drawer of the nightstand in a residence shared by defendant and man she was living with not proved to have been constructively possessed by defendant).

The foregoing obviously does not cover the entire spectrum of cases involving the constructive possession doctrine. The cases do, however, provide sufficient guidance to permit us to analyze the facts presented here. The record is devoid of any direct evidence suggesting that Earl had physical custody of the cocaine or the ability to control its disposition. To the contrary, the evidence supports the conclusion that it was Jones who had dominion and control over the contraband. It may be true that Earl was present in the residence while cocaine was openly displayed and while Douglas was negotiating with Jones about future sales, but this is precisely the mere proximity to drugs that we have repeatedly held to be insufficient to establish dominion and control. *See, e.g., Ramirez*, 880 F.2d at 236.

Aside from Douglas' inadequate testimony, the only evidence linking Earl to the residence was his fingerprints, along with the fingerprints of others, on a dinner plate that *may* have contained traces of cocaine powder,[1] and a cleaning ticket with his name on it that was found in a pair of pants in a bedroom of the residence.[2] No contraband was found in the bedroom. This evidence, even when combined with Douglas' statements, is not enough to prove constructive

possession. *See United States v. Vasquez–Chan*, 978 F.2d 546, 551, 553 (9th Cir.1992).

The record before us is inadequate to establish "constructive possession." Essentially, it tells us at most that Earl was present when narcotics transactions were conducted. No rational juror could have found dominion or control beyond a reasonable doubt. Accordingly, Earl's conviction must be reversed.

The district court's judgment of conviction is

REVERSED.

---

1. The question is complicated by the fact that, according to government counsel, the government witness "misspoke" and either misdescribed the plate or identified the wrong one. The jury was bound to consider the testimony actually offered, not what the prosecution might have tendered. In sum, the evidence regarding the plate is far from clear. However, even if it

were otherwise, that fact would not affect our decision.

2. The presence of only a single pair of pants, and the absence of any other item of clothing, tells us little about who lives on or controls the premises, even assuming that we can identify the pants' owner.