**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Cheryl Denica CALL, Defendant—
Appellant.**

**United States of America,
Plaintiff—Appellee,**

v.

**Laroy Alvin BERRY, Defendant—
Appellant.**

Nos. 01–50439, 01–50447.
D.C. No. CR–00–0431–SVW–02,
CR–00–00431–SVW–1.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 4, 2003.

Decided Aug. 18, 2003.

As Amended on Denial of Rehearing and Rehearing En Banc Oct. 6, 2003.

Before REINHARDT, O'SCANNLAIN and FISHER, Circuit Judges.

MEMORANDUM *

Appellants Cheryl Call and Laroy Alvin Berry appeal their convictions on charges of conspiracy to distribute cocaine base, in violation of 21 U.S.C. §§ 841, 846, and Call appeals her conviction on charges of distribution of cocaine base (crack) and cocaine, in violation of 21 U.S.C. § 841, and making property available for use or distribution of cocaine base, in violation of 21 U.S.C. § 856. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

The relevant facts are known to the parties and are discussed here briefly and only as necessary. Because appellants raise numerous challenges to their convic-

tions and sentences, we will address each of their contentions in turn.

## I. Preindictment Delay

Call and Berry claim that the indictment against them should have been dismissed for excessive preindictment delay, in violation of the Fifth Amendment. We review for abuse of discretion the district court's denial of a motion to dismiss for excessive preindictment delay. *United States v. Ross*, 123 F.3d 1181, 1184 (9th Cir.1997).

The district court did not abuse its discretion in denying the motion to dismiss because appellants have not shown "actual, non-speculative prejudice" from the 28–month preindictment delay, as required for a Fifth Amendment violation. *United States v. Gilbert*, 266 F.3d 1180, 1187 (9th Cir.2001) (internal quotation marks and citation omitted). Their general allegations of lost alibi witnesses—who remain unidentified—are insufficient to establish actual prejudice. *See, e.g., United States v. Mills*, 641 F.2d 785, 788 (9th Cir.1981) (no actual prejudice where defendant failed to "identify witnesses, relate the substance of their testimony, and efforts made to locate them").

The death of witness Richard Shelton also does not suffice to establish prejudice. There is no evidence in the record that Shelton would have testified, as Call and Berry claim, that he was the owner of the crack house or that he was aware of who was present when drugs were sold there. Given that such testimony would have been incriminating to Shelton, we decline to speculate that he would have so testified.[1] *See, e.g., United States v. Wallace*, 848 F.2d 1464, 1470 & n. 6 (9th Cir.1988)

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. 21 U.S.C. § 856(a)(2) subjects a property owner to liability for narcotics activity on his property if he knows of that activity and allows it to continue. *United States v. Tamez*, 941 F.2d 770, 774 (9th Cir.1991).

(no actual prejudice where there was little indication in the record that the witness would have testified favorably for the defendant, if he had testified at all, given the self-incriminating nature of the desired statements).

## II. Sixth Amendment Speedy Trial Violation

In addition to raising a claim of preindictment delay, Call and Berry also contend that excessive postindictment delay violated their Sixth Amendment speedy trial rights. We review Sixth Amendment speedy trial claims de novo. *United States v. Manning,* 56 F.3d 1188, 1193 (9th Cir. 1995), and we evaluate such claims under the four-part inquiry announced by the Supreme Court in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).[2]

■ In order to trigger the *Barker* analysis, however, Call and Berry first "must show that the period between *indictment* and *trial* passes a threshold point of presumptively prejudicial delay." *United States v. Beamon,* 992 F.2d 1009, 1012 (9th Cir.1993) (emphasis added) (internal quotation marks omitted). Call and Berry do not allege that the delay between indictment and trial violated the Sixth Amendment; instead, they argue that the four-month delay between indictment and their arrest violated their speedy trial rights. Even if we were to accept the unsupported premise of appellants' argument, we would reject their claim. Only four months elapsed between the issuance of the indictment and the appellants' arrest, and we have held that a four-month delay is insufficient for a Sixth Amend-

ment violation. *United States v. Turner,* 926 F.2d 883, 889 (9th Cir.1991).

## III. Confrontation Clause

Call argues that the district court's exclusion of impeachment testimony regarding informant Dishan Booker's juvenile convictions violated her rights under the Sixth Amendment's Confrontation Clause. We review claimed violations of the Confrontation Clause de novo. *United States v. Aguilar,* 295 F.3d 1018, 1020 (9th Cir. 2002).

■ In a criminal case, the court may admit evidence of juvenile convictions of a witness other than the accused only if such evidence "would be admissible to attack the credibility of an adult and the court is satisfied that admission in evidence is necessary for a fair determination of the issue of guilt or innocence."[3] Fed.R.Evid. 609(d). We conclude that the evidence was not necessary to Call's case. The jury heard testimony about Booker's numerous adult convictions, as well as his testimony about his own activities selling crack and his reduced sentence on the bank robbery conviction because of his cooperation in the case against Call and Berry. Even without the evidence of Booker's juvenile convictions, therefore, the jury had "sufficient information with which to appraise [Booker]'s possible bias and motives," and the demands of the Confrontation Clause were satisfied. *United States v. Bonanno,* 852 F.2d 434, 439 (9th Cir.1988).

## IV. Exclusion of Expert Testimony on the Sentencing Guidelines

Berry claims that the district court erred by excluding expert testimony re-

---

**2.** Under the *Barker* test, we balance (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the prejudice to the defendant. *Id.* at 530.

**3.** The government has not suggested that Booker's juvenile convictions would be inadmissible to attack the credibility of an adult.

garding the application of the sentencing guidelines to the cases of Dishan Booker and Chris Cameron, each of whom received downward departures for substantial assistance under U.S.S.G. § 5K1.1 for their cooperation against Call and Berry. We review the district court's decision to exclude expert testimony for an abuse of discretion. *United States v. Benavidez–Benavidez,* 217 F.3d 720, 723 (9th Cir. 2000).

■ We need not decide whether the district court abused its discretion in excluding the testimony, because even if the district court did err, Berry has not shown prejudice from the error. *See United States v. Blaylock,* 20 F.3d 1458, 1464 (9th Cir.1994) (reversal on the basis of an erroneous exclusion of evidence is unwarranted unless it is "more probable than not that the error affected the verdict.") (internal quotation marks and citation omitted). Booker testified that he received a roughly 100–month reduction in his sentence in return for his cooperation in the case, and that he hoped to receive a further reduction in exchange for his testimony at trial. Moreover, the district court specifically instructed the jury that Booker could not receive a reduced sentence unless the government made a motion to reduce his sentence. We conclude that the proposed expert testimony "would not have impeached the credibility of the[ ] witnesses beyond what was already accomplished," and therefore "any potential error in excluding the testimony cannot serve as a basis for reversal." *United States v. Johnson,* 297 F.3d 845, 862 (9th Cir.2002) (holding that defendant was not prejudiced by exclusion of expert testimony on the application of the sentencing guidelines to the sentences of cooperating witnesses when the jury was aware that the witnesses were testifying in hopes of receiving a reduced sen-

tenced, and the court instructed the jury to consider their testimony with caution).

## V.  Jury Instructions

Call contends that the district court erred by failing to give two required jury instructions. Because Call did not object to the jury instructions before the district court, we review them only for plain error. *United States v. Smith,* 282 F.3d 758, 765 (9th Cir.2002).

■ Call argues that the district court erred by failing to instruct the jury that "a person cannot legally conspire with a criminal informant." Call did not request such an instruction at trial; nor did she rely on the theory of the defense that the instruction embodies. Accordingly, the district court did not commit plain error by failing to give the informant instruction. *See United States v. Montgomery,* 150 F.3d 983, 996 (9th Cir.1998) (where defendant did not rely upon a particular defense theory at trial, "the district court's failure to offer an instruction on that theory *sua sponte* is not plain error").

■ We similarly reject Call's claim that the district court erroneously failed to instruct the jury that "Booker's ineligibility as a coconspirator left open the possibility that Call had merely a buyer-seller relationship with the only alleged coconspirator, Berry." As was the case with the informant instruction, Call did not request a buyer-seller instruction, and she did not develop this theory at trial. Indeed, a buyer-seller instruction would have undermined the theory of defense on which Call did rely—that she did not buy or sell crack. Accordingly, the district court did not commit plain error by failing to give a sua sponte buyer-seller instruction. *See id.*

## VI. Sufficiency of the Evidence

Call and Berry next challenge the sufficiency of the evidence to convict them. The evidence is sufficient to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original).

### A. Count I—Conspiracy to Distribute Cocaine Base

■ Call and Berry contend that the evidence was insufficient to convict them of conspiracy because there was no evidence of an agreement between them to distribute crack cocaine. We reject this contention. Booker testified that Call stated that Berry was her supplier, and that when Booker told Call that he wanted to purchase crack cocaine (on December 9, 1997), Call paged Berry, who arrived within minutes and began "cooking" the cocaine into solid form. Call then handed the cocaine to Booker—raising a reasonable inference that Berry gave the cocaine to Call when he finished cooking it. *See United States v. Weaver,* 290 F.3d 1166, 1172 (9th Cir. 2002) (stating that the court must construe all reasonable inferences in the government's favor when evaluating a claim of insufficient evidence). This evidence of coordination between Call and Berry is sufficient to show an implicit agreement between them to distribute cocaine base.[4] *United States v. Hegwood,* 977 F.2d 492, 497 (9th Cir.1992) ("Express agreement is not required [to support a conspiracy conviction]; rather, agreement may be inferred from conduct.").

That the evidence of an agreement came solely from the testimony of Booker, a cooperating witness, does not render the evidence insufficient. It is well-settled that the uncorroborated testimony of an accomplice or a paid informant is sufficient to sustain a conviction unless the testimony is "incredible or unsubstantial on its face." *United States v. Lopez,* 803 F.2d 969, 973 (9th Cir.1986); *see also United States v. Earl,* 27 F.3d 423, 425 (9th Cir. 1994).

Berry contends that Booker's testimony was not credible because the officers never saw Berry at the crack house, and because Booker's transaction with Berry was the only one of the controlled buys that was not recorded on tape. Berry also points to Booker's status as a paid informant who received a substantial sentence reduction in exchange for his cooperation. All of these facts, however, were revealed to the jury through the vigorous cross-examination of Booker, yet the jury still chose to believe him.[5] We cannot disturb this as-

---

**4.** Although the one transaction on December 9, 1997 did not involve more than 50 grams of cocaine base, as charged in Count I, a rational jury could have inferred from Booker's testimony—particularly his statements that Call identified Berry as her supplier and that Berry talked to Booker and the other dealers about how they were keeping the house and whether they allowed visitors there—that Call and Berry had an ongoing agreement to cooperate in the distribution of cocaine base, and that this agreement extended to all of the earlier drug transactions about which Booker testified.

**5.** It is irrelevant to our analysis of the sufficiency of the evidence on the conspiracy count that the jury acquitted Call of one of the substantive counts of distribution of cocaine base (Count IV) and Berry of all substantive counts of distribution of cocaine base (Counts V and VI). *See United States v. Hart,* 963 F.2d 1278, 1282 (9th Cir.1992) ("We review the sufficiency of the evidence for a given count independent of the jury's determination that evidence on another count was insufficient. Therefore, O'Connell's acquittal on the distribution count does not affect our consideration

sessment of Booker's credibility on appeal. *See United States v. Yossunthorn*, 167 F.3d 1267, 1270 (9th Cir.1999); *see also Lopez*, 803 F.2d at 973 (holding that it was the jury's prerogative to believe the uncorroborated testimony of an accomplice, despite the existence of inconsistencies in his testimony and the presentation of extensive impeachment evidence). Moreover, the evidence was not incredible or unsubstantial on its face. We therefore reject appellants' claim of insufficient evidence on the conspiracy count.

### B. Count II—Management or Control of a Crack House

■ Call argues that the evidence was insufficient to convict her of management or control of a crack house, in violation of 21 U.S.C. § 856, because there was no evidence that she had dominion or control over the premises. The jury heard evidence, however, that Call paid rent and utilities on the property,[6] and Booker testified that Call organized the staffing, payment, and schedule of the individuals who sold drugs in the house, that she provided those individuals with drugs to sell at the house and that she asked Booker to keep the house clean. A rational jury could conclude from this evidence that Call "manag[ed] the [house] with the knowledge that it [was] being used for the distribution of a controlled substance," in violation of § 856(a)(2). *United States v. Martinez–Duran*, 927 F.2d 453, 458 (9th Cir.1991); *see also United States v. Basinger*, 60 F.3d 1400, 1405 (9th Cir.1995) (to determine whether a defendant "maintains" a place, a court may consider whether she rents, furnishes, repairs, supervises or protects the site). The evidence therefore was sufficient to convict Call of violating § 856.

### VII. Motion for a New Trial

Call and Berry claim that the district court erred by denying their motion for a new trial on the ground that Booker recanted his testimony after the conclusion of the trial. The district court's denial of a motion for a new trial based on newly discovered evidence is reviewed for abuse of discretion. *United States v. Sarno*, 73 F.3d 1470, 1507 (9th Cir.1995)

To the extent that Booker's hearsay statement to Anthony Call constitutes a recantation of his testimony regarding Cheryl Call's participation in the November 24, 1997 controlled buy, Booker later recanted that recantation and asserted that he testified truthfully at trial. A repudiated recantation is mere impeachment evidence that may not be used as substantive evidence at a new trial. *Lindsey v. United States*, 368 F.2d 633, 636 (9th Cir. 1967). Newly discovered impeachment evidence can form the basis of a new trial motion only if the testimony it seeks to impeach was "uncorroborated and provided the only evidence of an essential element of the government's case." *United States v. Davis*, 960 F.2d 820, 825 (9th Cir.1992).

■ The allegedly recanted testimony—Booker's statement that Call threw a vial of crack to him as she drove by the crack house on November 24—did provide essential evidence of an element of the government's case on Count IV, but Call was acquitted on that count. The statement—

---

of the evidence supporting his conviction for conspiracy.") (Internal quotation marks omitted.)

**6.** Booker testified that when he asked Call, during the course of negotiations over his earnings from the drug sales, what she did with the profits she received from the drug

sales at the crack house, Call replied that she used the profits to pay the rent and utilities, as well as to buy drugs from her supplier. A rational jury could have inferred from the context of the conversation that Call was referring to the rent and utilities at the crack house, rather than at her own house, as Call now contends.

indeed, Booker's testimony generally—was not the only evidence supporting Call's conviction on Counts I, II and III, as the audio tapes and officer testimony corroborated Booker's assertion that Call managed the crack house and was engaged in a conspiracy to distribute cocaine base to Booker and others.[7] The evidence therefore does not justify a new trial.

## VIII. Ineffective Assistance of Counsel

Call and Berry contend that their attorneys' performance was constitutionally ineffective because both attorneys failed to raise "sentencing entrapment" and "imperfect sentencing entrapment" arguments.[8] Claims of ineffective assistance of counsel are more appropriately addressed in habeas corpus proceedings, which allow the defendant to develop a record of "what counsel did, why it was done, and what, if any, prejudice resulted." *United States v. Daly*, 974 F.2d 1215, 1218 (9th Cir.1992) (declining to review on direct appeal an ineffective assistance claim based, among other things, on defense counsel's stipulations and his failure to identify applicable sentencing guidelines) (internal quotation marks omitted). Because the record in this case is not sufficiently developed for us to assess counsels' alleged failures, we decline to review appellants' ineffective assistance claims.

7. Although Booker's testimony regarding Berry's participation in the conspiracy was uncorroborated, there has been no suggestion that Booker recanted his testimony against Berry. Booker's willingness to lie about the charges against Call may have provided additional evidence with which to impeach his testimony against Berry; however, given the ample impeachment evidence that the jury already heard, this evidence does not "indicate that a new trial would probably result in acquittal," as is required for the granting of a new trial motion. *United States v. Kulczyk,*

## IX. Cumulative Error

Because we have identified no errors at trial, we reject appellants' claim of cumulative error. *See United States v. Gutierrez,* 995 F.2d 169, 173 (9th Cir.1993).

The judgment of the district court is **AFFIRMED.**

931 F.2d 542, 548 (9th Cir.1991). *Cf. United States v. Marshall,* 56 F.3d 1210, 1212 (9th Cir.1995).

8. Berry argues in addition that his attorney was ineffective because he (1) did not request an offense-level reduction under the "safety valve" provisions and (2) stipulated to the drug analysis amounts and weights.

