**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Wai Chong LEUNG, Defendant–
Appellant.**

**No. 92–50498.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 2, 1994.

Decided Sept. 14, 1994.

---

Sonia E. Chanin, La Canada, CA, for defendant-appellant.

David R. Garcia, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: D.W. NELSON and NOONAN, Jr., Circuit Judges, and KING,* District Judge.

D.W. NELSON, Circuit Judge:

A jury convicted Defendant–Appellant Wai Chong Leung ("Wai Chong") of importation of heroin and four counts of conspiracy to import and distribute heroin. The district court sentenced Wai Chong to 360 months in prison and five years supervised release. On appeal, Wai Chong contends that there was insufficient evidence to convict him, and that the district court erred in finding that he was an "organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive" within the meaning of U.S.S.G. § 3B1.1(a). We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, and we affirm.

* The Honorable Samuel P. King, United States District Judge for the District of Hawaii, sitting by designation.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 21, 1989, U.S. Custom Service Agents intercepted a shipment of 1000 cases of lychee nuts at Long Beach Harbor. The shipment originated in Hong Kong. Eight cases were specially marked with the number "8"; these cases were found to contain a total of approximately 55.74 kilograms of heroin with a purity level of 77 percent. The heroin valued at $179,000,000, is the largest amount ever seized in the Central District of California.

The agents arrested Wai Chong's codefendant, Hien Hai Hoac ("Hoac"), who agreed to cooperate with the authorities and to assist in a controlled delivery of the drugs to the intended recipient Chau Ngoc Au ("Au"). Special Agent Jimmy Tse arrested Au as he accepted the delivery of the heroin.

At the police station, Hoac implicated Wai Chong and a fourth codefendant, Hgai Choi Chan ("Chan"). Hoac stated that he had met with Wai Chong and Au in Hong Kong and later in Vancouver to discuss the shipment. Hoac's statements to the police were somewhat inconsistent.

On January 7, 1990, the Royal Hong Kong Police took Chan into custody. A search of Chan's residence revealed documents relating to the lychee shipment, a lease agreement to a warehouse in Hong Kong, and keys to the same. Wai Chong was listed as the landlord on the lease agreement. In the warehouse the police found boxes of lychee nuts, various tools, traces of morphine and documents addressed to Wai Chong. Chan told the Royal Hong Kong police that Wai Chong had contacted him and had asked him to open up a trading company to ship lychee nuts to the U.S. Chan formed a trading company, obtained a business license, reserved a shipping date, and arranged a container for transportation. Chan and Wai Chong allegedly cut open the cans in eight of the boxes of lychee nuts, filled them with heroin, and resealed them. According to Chan, Wai Chong paid Chan $10,000 in Hong Kong currency and promised an additional $50,000–$70,000 if the deal was successful.

On January 7, 1990, the Royal Hong Kong police also searched Wai Chong's house where they found a rental receipt for the warehouse where the lychee nuts were stored and other items linking Wai Chong to the lychee shipment. Wai Chong was arrested one year later by the Canadian immigration authorities and extradited to the U.S. nearly two years later. Wai Chong's possessions at the time of his arrest included additional rent receipts for the Hong Kong warehouse and an airplane ticket for December 16, 1989 from Hong Kong to Vancouver.

According to the government, Wai Chong first met Au in early December 1989 in Hong Kong, and saw him again in Vancouver on December 16, 1989. The government contends that, on December 16, Wai Chong had a meeting with Au and Hoac to ask them to work with him in his antique business and his lychee nut export business. However, Wai Chong later informed Au that some of the boxes of lychee nuts contained heroin. At trial, the government introduced physical evidence to prove that this meeting had taken place.

Wai Chong contends that he never discussed heroin with Hoac nor promised to pay him $80,000 in Hong Kong currency as Hoac had testified. As to his connection to the Hong Kong warehouse, Wai Chong claims that he had agreed to help Chan rent the warehouse as a personal favor. Wai Chong also denies having filled the lychee cans with heroin and meeting with Hoac and Au in Canada.

Wai Chong's codefendants, who have each been sentenced to 20 years in prison, testified against Wai Chong at his trial. In exchange for their cooperation, the government agreed to recommend that their sentences be reduced.

At the sentencing hearing, the district court found that Wai Chong's base offense level was 38 and that he should be given a four-level upward adjustment for his role in the offense, resulting in an adjusted offense level of 42. The court's ruling was consistent with the conclusions reached by the probation officer in the Presentence Investigation Report. The court sentenced Wai Chong to 360 months in prison and five years of supervised release.

## STANDARD OF REVIEW

In deciding whether there was sufficient evidence to convict Wai Chong, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original).

To decide whether the district court properly found that Wai Chong should receive a four-level upward adjustment for his role in the offense, we must review the district court's factual findings for clear error and its interpretation of the Sentencing Guidelines *de novo*. *See United States v. Molina*, 913 F.2d 770, 773 (9th Cir.1990); *United States v. Zweber*, 913 F.2d 705, 708 (9th Cir.1990).

## DISCUSSION

### I. *SUFFICIENCY OF THE EVIDENCE*

█ Wai Chong contends that there was insufficient evidence for the jury to conclude that he *knowingly* was a member of the conspiracy and that he *knowingly* aided and abetted the distribution, possession, and importation of heroin. According to Wai Chong, the testimony of Wai Chong's codefendants Hoac and Au was inherently incredible because they both had a strong incentive to lie and implicate Wai Chong. In support of this claim, Wai Chong cites *United States v. Lopez*, 803 F.2d 969, 973 (9th Cir.1986), *cert. denied*, 481 U.S. 1030, 107 S.Ct. 1958, 95 L.Ed.2d 530 (1987). *Lopez*, however, supports the government's contention that the jury reasonably could and did in fact believe Hoac's and Au's testimony. As we explained in *Lopez*, when a jury is informed of the possible challenges to a witness' credibility and nevertheless believes the witness, the reviewing court should not upset the jury's credibility determination. *Id.* Moreover, the government points out that at trial the prosecution introduced physical evidence of Wai Chong's guilt that corroborated Hoac's and Au's testimony. While Hoac's and Au's testimony may have been slightly inconsistent at times, neither witness' testimony was "incredible or unsubstantial on its face." *Id.*

Wai Chong's contention is based in large part on the premise that, when a convicted criminal defendant testifies against a co-conspirator pursuant to an agreement with the government, his testimony should be disregarded automatically. There is an obvious danger that a witness who testifies with the expectation of receiving a benefit for his or her cooperation with the government will have an incentive to fabricate evidence. However, there are safeguards in place that are designed to protect against this danger. *See United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976). In the instant case, the witnesses were subjected to full cross-examination by the defense, the jury was informed that the witnesses were testifying pursuant to an agreement with the prosecution, and there is no evidence to suggest that the prosecutor would not have recommended that Hoac and Au receive a lesser sentence if Wai Chong had not been convicted. Under these circumstances, the jury reasonably believed that Wai Chong's version of the facts was not credible.

Accordingly, we conclude that there was sufficient evidence for a jury to determine that Wai Chong was *knowingly* a member of the conspiracy and that he *knowingly* aided and abetted in the distribution, possession, and importation of heroin.

### II. *FOUR-LEVEL UPWARD ADJUSTMENT TO BASE OFFENSE LEVEL*

#### A. *"Organizer or Leader" of Criminal Activity*

Wai Chong contends that the district court erred when it imposed a four-level upward adjustment to his base offense level pursuant to U.S.S.G. § 3B1.1(a). Under § 3B1.1(a), a four-level increase in offense level is warranted "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive."

█ Wai Chong argues that the government failed to prove by a preponderance of the evidence that he was an "organizer or leader," of the criminal activity and that the district court erred because it did not make

**1406**

specific findings to support its conclusion to the contrary. Wai Chong's reliance on *United States v. Hoac*, 990 F.2d 1099 (9th Cir. 1993) *cert. denied*, —— U.S. ——, 114 S.Ct. 1075, 127 L.Ed.2d 392 (1994), to buttress his argument is unavailing. In *Hoac*, we reversed Chan's sentence on the basis that there was no evidence in the record to support the district court's conclusion that Chan was an "organizer, manager, or leader." *Id.* at 1110–11. Furthermore, we explained that there was no evidence that Chan exercised control over the entire operation and over other members of the conspiracy. *Id.* at 1111.

Conversely, in the present case there is sufficient evidence in the record to show that Wai Chong was a leader or organizer of the conspiracy, and that he exercised control over the other members of the conspiracy. Moreover, Wai Chong failed to present evidence controverting these facts, or to object to the district court's failure to make specific factual findings in support of its conclusion. In *United States v. Peters*, 962 F.2d 1410, 1415 (9th Cir.1992), we affirmed the district court's imposition of an upward adjustment to the defendant's base offense level under U.S.S.G. § 3B1.1(c) on facts analogous to the instant case. In rejecting Peters' claim that the district court erred by failing to make specific findings of fact, we stated: "The record shows that the court adopted the government's argument that the adjustment was warranted and that ... Peters had an opportunity to present evidence to the contrary. That is all that is required." *Id.* As we noted in *Peters,* under such circumstances, specific findings of fact are merely "encouraged." *See id.* at 1415 n. 2 (citing *United States v. Rigby*, 896 F.2d 392, 394 (9th Cir. 1990); *see also United States v. Barrett*, 890 F.2d 855, 865 (6th Cir.1989) (holding that defendant must be given an *opportunity* to dispute any facts relevant to sentencing decision). Our holding in *Peters* is controlling here.

B. *"Otherwise Extensive"*

 Finally, Wai Chong claims that the district court incorrectly interpreted the second part of § 3B1.1(a), which provides that the criminal activity must involve at least 5 participants or be "otherwise extensive" to warrant a four-level upward adjustment to the initial base offense level. According to Wai Chong, the district court erred in two respects: (1) in finding that there were five participants in the conspiracy, and (2) in concluding that the conspiracy was "otherwise extensive." Wai Chong contends that, the prosecutor's evidence identified at most four participants in the conspiracy and that in determining whether the conspiracy was "otherwise extensive," the court should have focused on the number of *people* involved in the alleged conspiracy rather than the level of sophistication and the amount of drugs involved. Because we hold that the district court properly ruled that the conspiracy was "otherwise extensive" as provided in § 3B1.1(a), we do not need to decide whether the district court's finding that there were 5 participants was clearly erroneous.

The application notes to U.S.S.G. § 3B1.1 provide in relevant part:

1. A "participant" is a person who is criminally responsible for the commission of the offense, but need not have been convicted. . . .

3. In assessing whether an organization is "otherwise extensive" all persons involved during the course of the entire offense are to be considered. Thus, a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive.

Thus, as expressed by application note 3 to U.S.S.G. § 3B1.1, persons involved in the offense other than criminally responsible participants may be considered in determining whether the criminal activity was otherwise extensive. The present case, which involved Wai Chong and at least three subordinate participants, utilized the unknowing services of many outsiders. Throughout the course of the conspiracy, Wai Chong engaged in several exchanges with unknowing outsiders in furtherance of the criminal activity. Wai Chong rented a warehouse in Hong Kong to store and package the heroin. Wai Chong subsequently hired a shipping company to transport the heroin into the United States. Once the heroin reached the United States, Wai Chong utilized the services of Marcus Trucking Agency to transport the heroin

from Long Beach Harbor to his warehouse in Los Angeles, California. Based on the number of persons connected to the conspiracy, the district court was correct in finding that the operation was otherwise extensive. *See United States v. Mullins,* 992 F.2d 1472, 1479 (9th Cir.1993), (upholding upward departure on the ground that defendants used the services of many outsiders, although there were only three participants in the conspiracy) *cert. denied,* — U.S. —, 114 S.Ct. 556, 126 L.Ed.2d 457 (1993).

In addition, we note that the sophistication and scope of the conspiracy also make it "otherwise extensive" within the meaning of U.S.S.G. § 3B1.1(a). Although, as Wai Chong contends, application note 3 refers to the number of people involved in or connected with the conspiracy, nothing in the text of 3B1.1(a) or the application notes expressly limits the relevant inquiry to the number of *persons* involved in the criminal activity. Moreover, the phrase "otherwise extensive" is not susceptible to such a narrow interpretation. It would be contrary to the clear language of the rule to conclude that an organized drug operation that extends from Hong Kong to Los Angeles to Vancouver, and that is responsible for the distribution and importation of 55.74 kilograms of heroin valued at $179,000,000, does not constitute "otherwise extensive" criminal activity under U.S.S.G. § 3B1.1(a).

## CONCLUSION

For the aforementioned reasons, we conclude that there was sufficient evidence to convict Wai Chong on all charges, and that the district court did not err in finding that the organization was "otherwise extensive" within the meaning of U.S.S.G. § 3B1.1(a).

AFFIRMED.