RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0053P (6th Cir.)
File Name: 02a0053p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

    *v.*

DONALD M. ANTHONY,
    *Defendant-Appellant.*

No. 00-5622

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 99-20170—Bernice B. Donald, District Judge.

Argued: October 9, 2001

Decided and Filed: February 12, 2002

Before: JONES and MOORE, Circuit Judges; HAYNES,
District Judge.

---

## COUNSEL

**ARGUED:** Stephen B. Shankman, OFFICE OF THE
FEDERAL PUBLIC DEFENDER FOR THE WESTERN
DISTRICT OF TENNESSEE, Memphis, Tennessee, for

---

*The Honorable William J. Haynes, Jr., United States District Judge
for the Middle District of Tennessee, sitting by designation.

1

Appellant.     Patrick Jasperse, UNITED STATES DEPARTMENT OF JUSTICE, OFFICE OF CONSUMER LITIGATION, Washington, D.C., for Appellee. **ON BRIEF:** Stephen B. Shankman, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE WESTERN DISTRICT OF TENNESSEE, Memphis, Tennessee, for Appellant.  Patrick Jasperse, Steven N. Gersten, Mary Beth Schultz, UNITED STATES DEPARTMENT OF JUSTICE, OFFICE OF CONSUMER LITIGATION, Washington, D.C., Carroll L. Andre III, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

JONES, J., delivered the opinion of the court, in which HAYNES, D. J., joined.  MOORE, J. (pp. 13-17), delivered a separate dissenting opinion.

_____

**OPINION**

_____

NATHANIEL R. JONES, Circuit Judge.  On July 13, 1999, a federal grand jury returned an indictment charging the defendant, Donald M. Anthony, with multiple criminal offenses stemming from his removal of child-proof safety mechanisms from disposable cigarette lighters which his company later sold.  Anthony pleaded guilty to making a materially false statement to a federal investigator in violation of 18 U.S.C. § 1001, and was sentenced to a term of 24 months imprisonment and three years of supervised release. On appeal, the defendant argues that the district court misapplied the Sentencing Guidelines in deciding that the offense warranted a four-level enhancement under U.S.S.G. § 3B.1.1(a).  The facts and the applicable case law suggest that the defendant is correct.  Accordingly, we vacate his sentence and remand to the district court for resentencing.

## I. BACKGROUND

### A. The Offense Conduct

The defendant was the general manager of National Marketing, a Memphis-based company distributing various items, including disposable cigarette lighters, to retailers across the country. The federal government requires that all lighters manufactured or imported into the United States be resistant to operation by children younger than five years of age. However, in an effort to make his cigarettes appeal to smokers who dislike the child restraint mechanism, the defendant instructed National Marketing employees to remove the device from the lighters. The defendant installed a divider in the company's warehouse to keep the removal operation hidden from the public. The record indicates that about 13 to 15 employees worked full-time removing the safety devices.

On May 23, 1996, Janice Mitchell, an investigator from the Consumer Product Safety Commission ("CPSC"), visited National Marketing and met with the defendant. Kevin Carter, the defendant's nephew and National Marketing employee, testified at the sentencing hearing that prior to the investigator's arrival, the defendant told him to attend the meeting and agree with whatever he might say to the investigator. Carter also testified that he earlier observed the defendant and Marie Marrese (another employee) placing white-out on cigarette lighter sales invoices and running them through the xerox machine. Although the original invoices indicated that the lighters were not child-proof, the defendant and Marrese altered them to make it appear that the lighters were in fact child-proof. At the meeting on May 23, the defendant lied when asked if National Marketing had been removing safety devices from cigarette lighters. Following his instructions from the defendant, Carter also lied, agreeing with the defendant's false statements to the CPSC investigator. The defendant also gave the investigator the altered invoices which made it appear that the lighters National Marketing sold were child-resistant. In the days

following the meeting, the investigator followed up with a letter again asking whether National Marketing was removing the safety devices from its cigarette lighters. This time, the defendant retained Gale Mathes, an attorney, who prepared a letter in which the defendant "absolutely and adamantly denie[d] that allegation." J.A. at 94-96. The scheme unraveled, however, when the investigator obtained from a National Marketing customer two of the unaltered invoices in which the company indicated that the lighters were not child-resistant. A federal grand jury subpoenaed the invoices of National Marketing's cigarette lighter sales to determine whether the defendant had provided false information to the CPSC. Shortly after the defendant received the subpoena, he instructed Marrese and Shawn Ditto, a female acquaintance and National Marketing employee, to box up the invoices. The defendant and Ditto then loaded the boxes into the defendant's vehicle and drove to another location. There, he proceeded to throw the boxes containing the invoices into a garbage dumpster. The defendant later told Marrese to testify to the grand jury that the invoices were stolen from his vehicle by a competitor.

The defendant was subsequently indicted and pleaded guilty to making false statements to a federal investigator in violation of 18 U.S.C. § 1001. The Presentence Investigation Report ("PSIR") placed the defendant in criminal history Category III, and calculated his base offense level at six. The district court approved the following sentence enhancements: (i) two-levels under § 2F1.1(b) for an offense involving more than minimal planning; (ii) two-levels under § 3C1.1(c) for obstruction of justice; and (iii) four-levels for having been the leader or organizer of an offense that was "extensive" under § 3B1.1(a). With an adjusted offense level of 14 and a Category III criminal history, the recommended guideline range for the defendant was 21 to 27 months. The district court sentenced the defendant to a term of 24 months imprisonment followed by three years of supervised release.

*Dietz*, 950 F.2d at 53. The district court's finding that the plan to cover-up the false statements to the CPSC inspector was "extensive" is supported by the record and was not clear error. Therefore, I respectfully dissent from the majority's decision to vacate Anthony's sentence and remand to the district court.

contributions and developing an equivalence with the participation of culpable "participants" (which itself is not a standardized measure) is not even hinted at in the Guidelines.

The majority contends that the background commentary to § 3B1.1(a) further supports its position that § 3B1.1(a) imposes a numerosity requirement. The relevant commentary states that "[t]his section provides a range of adjustments to increase the offense level based upon the size of a criminal organization (*i.e.* the number of participants in the offense) and the degree to which the defendant was responsible for committing the offense." U.S.S.G. § 3B1.1(a), commentary, background. From the structure of the guideline, however, it seems clear that this comment cannot mean that "the number of participants in the offense" is the only factor in determining extensiveness. "Participants" is a defined term indicating criminally responsible persons, and both the text of § 3B1.1(a) and the commentary leave no doubt that the enhancement may be applied in some cases involving fewer than five "participants." U.S.S.G. § 3B1.1, commentary, applic. note 3. Therefore, this comment can mean only that the number of "participants" is one indicia of extensiveness, but not the only one. Moreover, the Commission's use of "extensive" later in the same background note suggests a broader meaning for the word than merely to denote the number of people involved in a criminal activity. Immediately following the paragraph cited by the majority, the Commission contrasts large criminal organizations that are considered extensive with "small criminal enterprises that are not otherwise to be considered as *extensive in scope or in planning or preparation*." U.S.S.G. § 3B1.1 commentary, background (emphasis added). This use of "extensive" plainly contemplates the scope of the activities involved in a criminal enterprise, and not merely the number of people.

The defendant does not challenge the district court's findings that the criminal activity was "extensive," other than to note that the court focused on the scope of the activity, rather than the number of people involved. As I have stated, I believe such an inquiry is permitted by § 3B1.1(a). *See*

## II.  DISCUSSION

The sole issue on appeal is whether the district court erred by increasing the defendant's offense level four levels under Sentencing Guidelines § 3B1.1(a). Whether the district court committed reversible error in its interpretation and application of the sentencing guidelines is a question we review *de novo*. *United States v. Hurst*, 228 F.3d 751, 756 (6th Cir. 2000). Section 3B1.1(a) states that:  "if the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels." U.S.S.G. § 3B1.1(a). Not at issue in this appeal is whether the defendant occupied the role of organizer or leader within the meaning of the guideline. He rightly concedes that in his capacity as general manager of National Marketing, he orchestrated the effort to mislead the CPSC investigator. As a result, whether the four-point increase was justified under § 3B1.1(a) turns on whether the offense involved five participants or was otherwise extensive.

### A.  Number of "Participants"

There are two reasons why the number of participants here does not warrant a four-point increase under § 3B1.1(a). The first requires that we carefully identify the "offense" in question. At sentencing, the government pointed to the fact that the operation to remove safety-devices from disposable cigarette lighters included, at various points, the defendant, Carter, Marrese, Ditto, and at least 13 other employees at National Marketing. The district court, however, correctly observed that it was bound by established case precedent in this circuit to factor into its sentencing analysis only that conduct which could lead to a criminal conviction resulting in a term of imprisonment. *United States v. Shafer*, 199 F.3d 826, 830-31 (6th Cir. 1999) (stating that "the Sentencing Guidelines simply do not provide for consideration of conduct . . . unless that conduct involves an offense that could lead to a criminal conviction resulting in prison time"). The removal of safety devices under the applicable law was not a criminal offense, rather it was one to which only civil penalties attach.

As a result, the admittedly extensive effort to flout federal product safety standards is conduct irrelevant to the sentencing analysis.

Instead, our focus is upon whether the defendant's false statements and cover-up effort in violation of 18 U.S.C. § 1001 warranted a four-level enhancement under § 3B1.1(a). We now identify the second reason why the defendant's criminal activity did not involve five participants. The key distinction is that between "participants" and "non-participants" under § 3B1.1(a). Application Note 1 defines a participant as "a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1(a), Application Note 1. The guideline offers no further definition of "participant" or what it means to be "criminally responsible," but cases applying the guideline uniformly count as participants persons who were (i) aware of the criminal objective, and (ii) knowingly offered their assistance. *See, e.g., United States v. Lewis*, 68 F.3d 987, 989 (6th Cir. 1995) (vacating sentence based on fact that other individuals did not knowingly participate in the offense and therefore could not be fairly considered "participants" under Section 3B1.1). On the other hand, "[a] person who is not criminally responsible for the commission of the offense . . . is not a participant." U.S.S.G. § 3B1.1(a), Application Note 1.

The government contends that a four-point enhancement is warranted because the lies and cover-up effort included five participants. In addition to the defendant, Carter, Marrese, and Ditto, the government identifies the defendant's attorney, Gale Mathes, as the fifth participant in the effort to mislead the investigator. The district court rejected this argument in the proceedings below. We will similarly reject this argument on appeal on the ground that while Mathes did prepare a letter to the investigator which conveyed the defendant's false statements, there is nothing in the record to suggest that Mathes was a knowing and willing participant in the cover-up scheme. Neither does the government allege as much in its brief. Mathes is best considered a non-participant in the

**3a:** widely extended in scope or application: broad in range . . . very complete . . . **b:** widely extended in area . . . extending over a large surface or space . . . **c:** marked by considerable length . . . **d:** large in amount . . . **e:** considerable in number . . . .

*Id.* at 805. Unlike the majority, therefore, I am not persuaded by the Third Circuit's observation that "[i]f the Commission intended the courts to utilize a broader analysis to determine if a criminal activity was 'extensive' it could easily have said so." *United States v. Helbling*, 209 F.3d 226, 246 (3rd Cir. 2000), *cert. denied*, 531 U.S. 1100 (2001). Given the broad nature of the phrase "otherwise extensive," it seems clear that the Commission *did* say so.

It is evident from the language and structure of the guideline that the "or otherwise extensive" prong envisions more than a mere headcount. If the enhancement could be applied only when the defendant's criminal activity involves five or more persons — whether or not they are culpable "participants," the Commission's use and careful definition of the word "participants" would be rendered mere surplus, since culpable participants and unknowing outsiders would be more or less fungible. Recognizing this concern, the majority adopts a "functional equivalence" test for "otherwise extensive," which requires that the total contributions of all culpable participants and unknowing outsiders be the "functional equivalent" of five "participants." This test involves a highly contextual and fact-dependent assessment of the extent and importance of the contributions of non-participants. *United States v. Carrozzella*, 105 F.3d 796, 803-04 (2d Cir. 1997). I find no support in the language of the guidelines for the interpretation of "or otherwise extensive" to mean the functional equivalent of five "participants." If the Commission had intended this meaning, it could have stated this intention explicitly rather than using the much broader phrase, "otherwise extensive." *See Leung*, 35 F.3d at 1407 ("[T]he phrase 'otherwise extensive' is not susceptible to such a narrow interpretation."). The majority's framework for evaluating the relative importance of unknowing

53 (1st Cir. 1991); *see also United States v. Yarnell*, 129 F.3d 1127, 1139 (10th Cir. 1997); *United States v. Briscoe*, 65 F.3d 576, 590 (7th Cir. 1995); *United States v. Leung*, 35 F.3d 1402, 1407 (9th Cir. 1994), *cert. denied*, 513 U.S. 1135 (1995); *United States v. Holland*, 22 F.3d 1040, 1046 (11th Cir. 1994), *cert. denied*, 513 U.S. 1109 (1995); *United States v. Mergerson*, 4 F.3d 337, 347-48 (5th Cir. 1993), *cert. denied*, 510 U.S. 1198 (1994). Although the Sixth Circuit has never explicitly decided this issue, we have previously noted with approval the view that a § 3B1.1(a) enhancement is required where the district court finds that criminal activity was "otherwise extensive" based upon factors other than the number of participants. *See United States v. Sanders*, 95 F.3d 449, 457 (6th Cir. 1996) ("[T]he district judge did find expressly that the conspiracy was 'otherwise extensive' because activities in furtherance of the conspiracy took place in several states. Upon the district court's explicit findings . . . , a four-level enhancement is mandated by U.S.S.G. § 3B1.1(a).").

This interpretation of § 3B1.1(a) best gives effect to the plain language of that guideline. *United States v. Dietz*, 950 F.2d at 54. The disjunctive language of § 3B1.1(a) allows the imposition of a four-level enhancement when the defendant's criminal activity did not involve five or more participants, but was "otherwise extensive." *United States v. D'Andrea*, 107 F.3d 949, 957 (1st Cir. 1997). The use of the word "otherwise" indicates that the second category, "otherwise extensive," includes factors that are different in kind than the first category, "five or more participants." WEBSTER'S THIRD NEW INT'L DICTIONARY 1598 (1986) (defining "otherwise" as "in a different way or manner"). Moreover, the use of the open-ended word "extensive" evinces the Commission's intention that the "otherwise extensive" prong should include a wide-ranging consideration of factors such as geographic scope, duration, and complexity of the criminal enterprise. The relevant definition of this word indicates that numerosity is merely one, but by no means the primary, factor that is commonly considered in determining extensiveness:

offense *sub judice*, therefore leaving only four individuals who might possibly be considered "participants" within the meaning of § 3B1.1(a). Having determined that the defendant's criminal activity did not involve five "participants" as defined by the commentary to the guideline, we turn now to analyze whether the activity was "otherwise extensive."

## B.  "Otherwise Extensive"

If the offense involved fewer than five participants, the "otherwise extensive" language of § 3B1.1(a) is an alternative ground on which the sentencing court may base its decision to depart upward. *United States v. Carrozzella*, 105 F.3d 796, 803 (2d Cir. 1997). The two tests are equivalent, meaning that an upward departure is not appropriate under the "otherwise extensive" test unless the offense in question was somehow the functional equivalent of a crime involving five or more participants. *See id.; see also United States v. Helbling*, 209 F.3d 226, 244 (3d Cir. 2000). The pivotal question in this case concerns what factors a sentencing court may consider in determining whether an activity was "otherwise extensive" under the guideline. In *Helbling*, the Third Circuit framed the question succinctly as

"whether, if fewer than five participants are involved, the determination of equivalence must focus upon a headcount of the individuals involved, or may also rely upon other indices of extensiveness such as the magnitude of the harm, the complexity of the planning, or the number of victims."

*Helbling*, 209 F.3d at 244 (citations omitted).

The circuit courts disagree on which is the correct approach. The First Circuit's decision in *United States v. Dietz*, 950 F.2d 50, 53 (1st Cir. 1991) represents the majority view that the phrase "otherwise extensive" permits the sentencing court to consider "the totality of the circumstances, including not only the number of participants but also the width, breadth, scope, complexity, and duration of the

scheme." On the other hand, the Second Circuit in *Carrozzella* decided that the "otherwise extensive" language in § 3B1.1(a) is not a license to engage in a sweeping analysis of the offense for any factor that might possibly support a finding of extensiveness. The Second Circuit concluded that the phrase authorizes a four-level enhancement when the combination of knowing participants and non-participants in the offense is the functional equivalent of an activity involving five criminally responsible participants. *See Carrozzella*, 105 F.3d at 802-04. We believe this test best carries out the intent of the Sentencing Commission, and therefore we subscribe to it. We draw support primarily from the guideline itself. The background commentary to § 3B1.1 states that:

> This section provides a range of adjustments to increase the offense level based upon the *size* of the criminal organization (i.e., the *number of participants* in the offense) and the degree to which the defendant was responsible for committing the offense . . . . The Commission's intent is that this adjustment should increase both with the *size* of the organization and the degree of the defendant's responsibility.

U.S.S.G. § 3B1.1, Background (emphasis added). From the commentary, we gather that in authorizing a departure for "extensive" criminal activity, what the Sentencing Commission had in mind was "numerosity." This is reflected in the Commission's plainly-stated intent to authorize an enhanced penalty based upon "the size of the criminal organization" in question. In fact, while the commentary makes repeated references to the "size" of the criminal organization and the "number" of participants involved, it makes no mention of the alternative factors relied upon in *Dietz* to find that the activity was extensive. We agree with the Third Circuit's observation in *Helbling* that "[i]f the Commission intended the courts to utilize a broader analysis to determine if a criminal activity was 'extensive' it could easily have said so." *Helbling*, 209 F.3d at 246.

---

**DISSENT**

---

KAREN NELSON MOORE, Circuit Judge, dissenting. I agree with the majority that the criminal enterprise at issue here did not include five or more "participants," as that term is used in the Sentencing Guidelines. I respectfully dissent, however, because I do not believe that the majority's narrow interpretation of the "otherwise extensive" prong of § 3B1.1(a) comports with the plain language of the Guidelines and the accompanying commentary.

Section 3B1.1(a) permits a four-level enhancement for a defendant who "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). The Guidelines define the word "participant" as "a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1, commentary, applic. note 1. The majority concludes that the phrasing of § 3B1.1(a) suggests an equivalence between "five or more participants" and "otherwise extensive," such that "otherwise extensive" must be interpreted in terms of the number of individuals involved in the criminal activity and the extent of their contributions.

A more plausible interpretation of § 3B1.1(a), in my opinion, is that the presence of five or more "participants" establishes a conclusive presumption that the criminal activity is "extensive," but that other factors may warrant a finding that criminal activity involving fewer than five participants is "otherwise extensive." This interpretation is consistent with the view endorsed by the majority of circuits, which permits the sentencing court to "examine the totality of the circumstances, including not only the number of participants but also the width, breadth, scope, complexity and duration of the scheme," in determining whether criminal activity was "otherwise extensive." *United States v. Dietz*, 950 F.2d 50,

combined effort was equal to that of five criminally responsible participants.

### III.  CONCLUSION

We therefore vacate the defendant's sentence and remand to the district court for proceedings in accord with this opinion.

The commentary gives us added confidence that our analysis makes sense as a matter of sentencing policy.  For one thing, the commentary explains that in large organizations, a sentencing court is more likely to see a clear division of responsibility, enabling it to assign greater criminal liability to those who undertook a leading role in the offense.  U.S.S.G. § 3B1.1(a), Background.  The focus on numerosity is also consistent with the concern expressed in the commentary that leaders of large criminal organizations exhibit a greater likelihood of recidivism.  *Id.*  It is natural then for the Sentencing Commission to have adopted a definition of extensiveness that specifically comports with its concerns about large  criminal organizations and the individuals who lead them.  In contrast, the First Circuit's approach, authorizing a departure based on any number of factors, is not as well-tailored to address the policy concerns raised in the commentary.

### C.  Counting Methodology Under U.S.S.G. § 3B1.1(a)

We have explained why we believe the test for extensiveness under § 3B1.1(a) is a test of numerosity.  Our final task is to explain how courts must examine the contributions of knowing participants and non-participants to determine whether the combination is the functional equivalent of an activity involving five criminally responsible participants.  Application Note 3 is the starting point of our analysis:  "In assessing whether an organization is 'otherwise extensive,' all persons involved during the course of the entire offense are to be considered.  *Thus, a fraud that involved only three participants but used the services of many outsiders could be considered extensive.*"   U.S.S.G. § 3B1.1, Application Note 3 (emphasis added).  The difficult task is counting non-participants in a way that ensures an activity is not identified as "otherwise extensive" as a result of counting persons who were only tangentially involved in the offense.  "The purpose of the provision would rarely be achieved by counting the unknowing services of some actors in a criminal scenario, a taxicab driver or bank teller, for instance." *Helbling*, 209 F.3d at 247.  Much of the work has already

been done for us by the Second Circuit in *Carrozzella* and the courts that agree with its analysis of "otherwise extensive."[1] The purpose of the *Carrozzella* test is to enable a court to identify an individual whose contribution was so essential to the criminal objective that he should be counted as a "participant" under § 3B1.1(a) irrespective of his true criminal intent. To this end, *Carrozzella* announced a three-factor test that examines:

(i) the number of knowing participants;
(ii) the number of unknowing participants whose activities were organized or led by the defendant with specific criminal intent; and
(iii) the extent to which the services of the unknowing participants were peculiar and necessary to the criminal scheme.

*Carrozzella*, 105 F.3d at 804. After the sentencing court determines the number of non-participants who should be counted in light of factors (ii) and (iii), the court must consider whether the combination of knowing participants and countable non-participants is the functional equivalent of an activity carried out by five criminally responsible participants. The Second Circuit noted that this requires more than a simple summation of participants and non-participants because "[t]he use of knowing participants to carry out a criminal activity may be more inefficient than the use of knowing participants." *Id.* As a result, in addition to the *number* of countable non-participants, the test for functional equivalence requires that a sentencing court consider how significant the role and performance of an unwitting participant was to the ultimate criminal objective. *See id.*

The district court concluded that the present scheme was extensive in light of the various efforts that were undertaken to mislead the federal investigator:

---

[1] In addition to the Third Circuit in *Helbling*, the D.C. Circuit has adopted the Second Circuit's approach in *Carrozzella*. *See United States v. Wilson*, 240 F.3d 39 (D.C. Cir. 2001).

The proof in the record that the Court has received, and to which the Court finds credible, the testimony of Kevin Carter who testified . . . that at the time that Mr. Anthony knew that Ms. Mitchell was coming to talk about these lighters that he, Mr. Carter, was specifically instructed to agree with whatever Mr. Anthony said to Ms. Mitchell. Mr. Carter testified that he did agree with Mr. Anthony even though he knew Mr. Anthony's statements were false.

The testimony of - - Shawn Ditto was that Mr. Anthony solicited her help in boxing up and destroying invoices to further cover-up or to prevent the Consumer Product Safety Commission from learning of his conduct.

There is the - - the testimony of various witnesses regarding the altering of invoices, and I think that testimony was principally given by Mr. Carter. There was testimony regarding the destruction of the invoices by throw[ing] them in the dumpster. All these activities were designed to cover-up this false statement of Mr. Anthony to Ms. Mitchell and in that sense the Court finds that was [sic] the efforts to cover-up that were in fact extensive."

J.A. at 154-55.

We do not disagree that the cover-up scheme was multifaceted or even "extensive" as that word is commonly understood. Nevertheless, "Section 3B1.1 is . . . not so much about extensiveness in a colloquial sense as about the size of the organization in terms of the persons involved that a defendant organized or led." *Carrozzella*, 105 F.3d at 803 (internal quotations omitted). Thus, we must conclude that the district court's finding that the scheme in violation of 18 U.S.C. § 1001 was "extensive" rests upon a consideration of impermissible factors. On remand, the district court should apply the analysis we have articulated in this opinion, examining the respective contributions of the defendant, Carter, Marrese, Ditto, and Mathes to determine whether the