NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 14a0243n.06

Case No. 13-1856

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Mar 31, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| JOHN WILSON, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE: KEITH, SILER, and ROGERS, Circuit Judges.

**SILER**, Circuit Judge. Defendant John Wilson appeals his sentence, arguing that the district court erred in assessing a two-level vulnerable victim enhancement and a four-level aggravating role enhancement. We **AFFIRM**.

**BACKGROUND**

From 2000 to 2010, Wilson defrauded incarcerated individuals and their families by selling them legal services under the false representation that he was an attorney, despite never having attended law school. He performed legal research and drafted legal documents and filed them either under actual attorneys' names with forged signatures or "pro se" on behalf of the inmates. He employed at least a dozen individuals in furtherance of the scheme and advertised

his services through direct mailings to inmates, whose names he obtained from accessing various state government websites.

In 2003, the State Bar of Michigan obtained a permanent injunction prohibiting Wilson from providing legal advice or services, from acting as a representative or intermediary in legal matters, and from holding himself out as an attorney authorized to practice law. However, he continued soliciting inmates and misrepresenting the nature of his business. Throughout the scheme, he failed to file federal income tax returns and received approximately $2.6 million from the inmates and their families. In total, the fraudulent scheme victimized more than 2,100 individuals. Wilson eventually pleaded guilty to two counts of mail fraud and one count of failure to file a federal income tax return.

At sentencing, the district court overruled Wilson's objection to assessing a two-level vulnerable victim enhancement. The court also overruled Wilson's objection to assessing a four-level aggravating role enhancement for his role as an organizer or leader of a criminal activity that involved five or more participants or that was otherwise extensive, finding a total of nine knowing and unknowing participants in the conspiracy, plus Wilson. The court assessed two additional levels pursuant to USSG § 3A1.1(b)(2) for the large number of vulnerable victims, as well as two levels pursuant to USSG § 2B1.1(b)(9)(C) because Wilson continued to commit the offense in violation of the injunction. It sentenced him to concurrent imprisonment terms of 240 months for the mail fraud counts and 12 months for failure to file an income tax return.

**DISCUSSION**

**I.      Vulnerable Victim Enhancement**

Wilson argues that the district court erred in finding that the incarcerated individuals and their families qualified as vulnerable victims because they did not have particular characteristics that rendered them likely prey to his fraudulent scheme.

"We review a district court's findings regarding the vulnerability of a victim for clear error." *United States v. Brawner*, 173 F.3d 966, 972 (6th Cir. 1999). Under the vulnerable victim enhancement, a defendant's base offense level for determining his Guidelines range is increased two levels "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim." USSG § 3A1.1(b)(1).   A vulnerable victim is a victim of the offense of conviction "who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." USSG § 3A1.1 cmt. n. 2.

Victims are "otherwise particularly susceptible to the criminal conduct" within the meaning of the Guidelines where they are "predisposed to the very scam" used to defraud them. *Brawner*, 173 F.3d at 973. Evidence of initial targeting followed by a "reloading" process may be used to indicate their susceptibility. *Id.* For example, in *Brawner*, the defendant bought a "leads list," which identified persons willing to send in money in the hope of winning a valuable prize. *Id.* Then, through a reloading process, the defendant repeatedly contacted persons who had already succumbed to the scheme. *Id.* We held that the victims' susceptibility was "clearly covered" by § 3A1.1(b)(1) and was evinced by the defendant's "refined [and] verified 'sucker's' list." *Id.*

The district court found that Wilson's incarcerated victims were particularly susceptible to his criminal conduct because of their limited education, cognitive abilities, and ability to

understand the legal technicalities of their case, and because of their limited communication with and isolation from the outside world due to their incarceration. It also found that the families were vulnerable victims because of their desperation, lack of recourse and information, and unsophistication. The court found, and Wilson admitted, that Wilson sought out certain classes of incarcerated persons, including those of Hispanic heritage, because he believed they were more apt to pay for his services. The court concluded that Wilson devised the scheme specifically to prey upon these perceived vulnerabilities. Also, as in *Brawner*, Wilson used a reloading process in the form of a list of old paying clients to identify clients who were thus more likely to pay for new services.

Therefore, Wilson's initial targeting procedures, followed by his use of a reloading process, demonstrate that Wilson targeted individuals he knew to be particularly susceptible to his criminal conduct. *Brawner*, 173 F.3d at 973. The district court did not clearly err in finding that Wilson's victims were vulnerable.

## II.      Aggravating Role Enhancement

Wilson argues that the district court erred in finding that his criminal activity involved five or more participants or, alternatively, that the court erred in finding that his criminal activity was otherwise extensive. Wilson conceded that he was a leader because he accepted a two-level enhancement for his leadership role. Therefore, whether a four-level enhancement was justified depends on whether the offense involved five or more participants or was otherwise extensive.

We review a district court's findings of fact for clear error. *United States v. Washington*, 715 F.3d 975, 982 (6th Cir. 2013). Usually, we review its legal conclusions *de novo*; however, we review the legal conclusion that a person is an organizer or leader for the aggravating role enhancement under a deferential standard of review. *Id.* at 982–83.

Pursuant to the aggravating role enhancement, a defendant's base offense level for determining his Guidelines range is increased four levels "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." USSG § 3B1.1(a). "The two tests are equivalent, meaning that an upward departure is not appropriate under the 'otherwise extensive' test unless the offense in question was somehow the functional equivalent of a crime involving five or more participants." *United States v. Anthony*, 280 F.3d 694, 699 (6th Cir. 2002).

First, in determining the number of participants for the five or more participants test, those who are criminally responsible for the commission of the offense are counted, even if they were not convicted. USSG § 3B1.1 cmt. n.1. Further, persons who were aware of the criminal objective and knowingly offered assistance qualify as participants. *Anthony*, 280 F.3d at 698.

Wilson agreed at sentencing that he and his employee Lari Zeka were participants and, on appeal, he concedes that James Roberts, the attorney who agreed to provide a gloss of legal representation to Wilson's scheme, was also a participant. The district court found that Ashley Fournier and Reynaldo Rodriguez were participants and explicitly noted that they would be chargeable as aiders and abettors. Fournier conducted boilerplate legal research without any legal training, which she knew was sold to the victims. Fournier further admitted she had reason to believe Wilson was running a scheme, she knew Wilson was not an attorney but that he was holding himself out as one, and she did not believe the research was helpful. She also stated that one of the reasons she resigned was because she knew Wilson was not running a legitimate business. Rodriguez had likewise been suspicious that Wilson was perpetrating fraudulent activities and had acted as a bodyguard to protect Wilson from those he had defrauded.

Therefore, there was ample evidence that Fournier and Rodriguez were both aware that they were involved in a fraudulent scheme when working for Wilson and that they knowingly offered their assistance to Wilson in perpetrating the fraud, thus qualifying them as participants. Because Wilson admits that there were three participants and because the evidence indicates that there were at least two more participants, the district court did not err in finding that Wilson was an organizer or leader of a criminal activity that involved five or more participants pursuant to §3B1.1(a). *Washington*, 715 F.3d at 983.

Second, although the district court also found the criminal activity was otherwise extensive pursuant to § 3B1.1(a), it is unnecessary for us to decide that issue, as we have affirmed on the alternative theory of finding five knowing participants.

**AFFIRMED**.