NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0173n.06

Nos. 19-4124/4131

**UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Apr 06, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE NORTHERN DISTRICT OF |
| | ) | OHIO |
| PABLO ARRECHAVALETA (19-4124); | ) | |
| SILVIO LEON (19-4131), | ) | |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |

BEFORE: SILER, WHITE, and STRANCH, Circuit Judges.

HELENE N. WHITE, Circuit Judge. Defendants Silvio Leon and Pablo Arrechavaleta pleaded guilty to several charges related to their involvement in a credit-card and identity-theft conspiracy. They appeal their sentences, arguing that the district court erred in computing the loss amount by applying the $500 per-account minimum found in the Sentencing Commission's commentary to Section 2B1.1 of the Sentencing Guidelines. Leon additionally challenges the application of a four-level leadership-role enhancement in calculating his guidelines range. We VACATE Defendants' sentences and REMAND for resentencing consistent with this opinion.

**I.**

In May 2016, Leon began engaging in a conspiracy to steal credit- and debit-card account numbers using electronic card-skimming devices attached to gas pumps. Arrechavaleta joined the conspiracy at some point after his release from prison in September, 2016. From at least May 5, 2017, through June 12, 2018, Arrechavaleta and Leon conspired together in furtherance of the

identity-theft scheme, utilizing credit- and debit-account numbers skimmed from gas pumps to purchase gift cards and merchandise valued at more than $1,000.

On November 15, 2018, a federal grand jury in the Northern District of Ohio returned an indictment charging Leon and Arrechavaleta with the following five counts: (1) Conspiracy to Commit Access Device Fraud, 18 U.S.C. § 1029(b)(2); (2) Using Unauthorized Access Devices, 18 U.S.C. §§ 1029(a)(2) and 2; (3) Possessing 15 or More Devices, 18 U.S.C. §§ 1029(a)(3) and 2; and (4-5) Aggravated Identity Theft, 18 U.S.C. §§ 1028A(a)(1) and 2.[1]

Defendants pleaded guilty to all counts pursuant to plea agreements. Defendants admitted that as a direct result of the credit-card skimming conspiracy, at least $102,670.38 in fraudulent purchases were made at Sam's Club locations, $90,569.59 of which were made during the time Arrechavaleta was involved. Defendants also admitted that as of June 11, 2018, they were in possession of account information for around 4,900 credit- and debit-card accounts, including account holders' names, "with the intention of re-encoding said account information onto counterfeit access devices and conducting retail transactions to obtain gift cards, merchandise, and other things of value." Leon Plea Agreement, R. 28, PID 149–50; Arrechavaleta Plea Agreement, R. 29, PID 168–69.

The parties had no agreement as to the sentences to be imposed or the correct sentencing guidelines ranges. The Presentence Investigation Reports ("PSRs") for both Defendants recommended that their offense levels be increased sixteen levels based on a loss amount of $2,552,669.00. Pursuant to Application Note 3(F)(i) of the commentary to Sentencing Guidelines § 2B1.1, the probation office calculated the loss amount by multiplying the 4,900 accounts in Defendants' possession by $500.00 ($2,450,000.00) and adding an additional $62,698.00 for

---

[1] Count 4 related to conduct between June 13, 2017, and June 12, 2018, and Count 5 was specific to the possession of access devices on June 11, 2018.

purchases from accounts under the name A.V. and $39,971.00 for accounts under the name J.A. Leon's PSR recommended an additional four-level enhancement for a leadership role, pursuant to Sentencing Guidelines § 3B1.1(a).

Defendants objected to the recommendation that the district court apply a sixteen-level enhancement to their base offense level for the loss amount. Defendants argued that under this court's decision in *United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (en banc) (per curiam), Application Note 3(F)(i) impermissibly expands Section 2B1.1(b)(1)'s definition of loss, and therefore should not be applied to calculate loss for the purpose of sentencing. They asserted that the total loss should have been calculated in accordance with the actual loss admitted in the plea agreement: $90,569.59 for Arrechavaleta and $102,670.38 for Leon. Leon also objected to the recommendation that he be assessed a four-level leadership enhancement, arguing that there was no evidence to demonstrate that he was a leader or organizer of the conspiracy, or that there were "five or more participants" involved. U.S.S.G. § 3B1.1(a)

The district court accepted the recommendations in the Defendants' respective PSRs and sentenced both Defendants on the high end of the Guidelines range for counts 1–3: 105 months for Arrechavaleta and 151 months for Leon. Defendants were additionally sentenced to two-year mandatory consecutive terms for counts 4 and 5, and ordered to pay restitution (a joint and severable obligation) of $102,670.38 for Leon and $90,569.59 for Arrechavaleta. The district court ruled that the Guidelines' commentary setting a $500-per-account minimum for the calculation of loss amount was distinguishable from the commentary at issue in *Havis*, and thus was properly applied in determining the appropriate Guidelines range. The district court also found Leon's objection to the recommended four-level leadership enhancement unpersuasive.

**II.**

We review a district court's loss-calculation method de novo and its factual findings for clear error. *United States v. Maddux*, 917 F.3d 437, 450 (6th Cir. 2019) (citing *United States v. Warshak*, 631 F.3d 266, 328 (6th Cir. 2010)).

Section 2B.1.1 of the Sentencing Guidelines provides that for fraud, forgery, and offenses involving counterfeit instruments, where loss exceeds $6,500, the base offense level must be increased in increments provided for in the Guidelines. U.S.S.G. § 2B1.1. To calculate the applicable loss amount, the district court referred to Comment 3(F)(i), which states in relevant part, "[i]n a case involving any counterfeit access device or unauthorized access device, loss includes any unauthorized charges made with the counterfeit access device or unauthorized access device and shall be not less than $500 per access device." *Id.* cmt. 3(F)(i). Application of this comment would support the district court's loss-amount scoring. However, in *United States v. Riccardi*, a panel of this court recently held that the $500-per-account minimum loss amount in Comment 3(F)(i) to the guidelines "does not 'fall within the bounds of reasonable interpretation' of § 2B1.1's text," and that therefore district courts should not utilize it at sentencing.[2] 989 F.3d 476, 489 (6th Cir. 2021) (quoting *Kisor v. Wilkie*, 139 S. Ct. 2400, 2416 (2019)). Consistent with *Riccardi*, we find that the district court erred in applying a $500 per-account minimum in calculating the loss amount under § 2B1.1. For that reason, Defendants are entitled to resentencing.

---

[2] Defendants filed a Rule 28(j) letter discussing *Riccardi*. In response, the Government conceded that *Riccardi* controls and agreed with Defendants that their sentences should be vacated and their case remanded for resentencing.

**III.**

Leon also challenges the district court's application of a four-level leadership enhancement, an issue that will arise again on resentencing. Because the conclusion that a person is an organizer or leader under Section 3B1.1 of the Sentencing Guidelines "depends on a number of factual nuances that a district court is better positioned to evaluate," this court applies a deferential standard in reviewing this enhancement. *United States v. Washington*, 715 F.3d 975, 983 (6th Cir. 2013).

Under the Sentencing Guidelines, an enhancement of four levels is appropriate if the defendant "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). In determining whether a Section 3B1.1(a) enhancement is appropriate, a court should consider:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

*United States v. Hernandez*, 227 F.3d 686, 699–700 (6th Cir. 2000) (quoting U.S.S.G. § 3B1.1 cmt. n.4).

Leon advances three bases for his challenge to the application of the four-level leadership enhancement: (1) the district court impermissibly based its determination on the fact that Leon was on supervised release for a similar offense; (2) the district court impermissibly concluded Leon was acting in a leadership role based on the fact that Leon rented cars and booked flights in furtherance of the conspiracy; and (3) the district court erred in finding that there were five or more participants involved in the conspiracy.

The district court found that Leon was the "clear leader" of the scheme because he was on supervised release for a similar credit-card skimming scheme when the conspiracy began; he was

"the one renting the cars and booking most of the flights"; and he appears to have "recruited co-Defendant Arrechavaleta to join the scheme as soon as Arrechavaleta was released from prison." Sentencing Tr., R. 65, PID 544. We find no error.

The fact that Leon was on supervised release for a similar scheme demonstrates that he had knowledge of the proper steps to set up and carry out the conspiracy. That he booked most of the travel to carry out the scheme demonstrates that he had a high degree of participation in and responsibility for the planning and organization of the conspiracy. And, given that Leon appears to have been organizing and carrying out the scheme prior to Arrechavaleta's release from prison, it is fair to infer that Leon recruited Arrechavaleta to join the scheme. These are all proper considerations supporting imposition of the leadership enhancement.

The district court also did not err in determining that the conspiracy involved at least five participants. Surveillance showed that two confederates assisted Leon in purchasing goods with stolen account information prior to Arrechavaleta's release from prison. Leon does not dispute that the two were present during the fraudulent purchases. He argues instead that "there has been no showing" that the individuals identified "were either aware of the criminal objective or knowingly offered assistance." Leon is correct that "a person who is not criminally responsible for the commission of the offense . . . is not a participant." *United States v. Anthony*, 280 F.3d 694, 698 (2002) (quoting U.S.S.G. § 3B1.1(a)). But Leon admitted in his plea agreement that he conspired with Arrechavaleta and "others" and the factual basis for his plea includes numerous references to actions undertaken with "co-conspirators," including the use of "unauthorized access devices to obtain gift cards, merchandise, and other things of value." Leon Plea Agreement, R. 28, PID 145–46. Thus, it was not unreasonable for the district court to infer that the two unidentified individuals seen purchasing goods with Leon using the unauthorized access devices,

prior to Arrechavaleta's release from prison, were the "co-conspirators" referred to in the plea agreement.

Leon also admitted in his plea agreement that he and "his co-conspirators" mailed fraudulently purchased gift cards to "confederates in Florida." *Id.* at PID 147. Even assuming Arrechavaleta was one of the co-conspirators referenced in these admissions, at least five individuals were involved in the conspiracy: Leon, Arrechavaleta, two co-conspirators seen in the surveillance tape, and at least two "confederates" in Florida (given the plural use of the word). Thus, the district court did not err in finding that the conspiracy involved at least five participants. Additionally, even if fewer than five participants were involved, the conspiracy was nevertheless "otherwise extensive." U.S.S.G. § 3B1.1(a).

**IV.**

Following *Riccardi*, we VACATE Defendants' sentences and REMAND for resentencing consistent with this opinion.